ELIZABETH STOPP, Respondent, *v.* THE FITCHBURG RAILROAD COMPANY, Appellant.

*Damages for personal injuries caused by the negligence of a railroad company — absence of contributory negligence must be proved by the plaintiff.*

To maintain an action brought to recover damages for personal injuries, alleged to have been sustained by reason of the negligence of the defendant, it is necessary for the plaintiff to establish the absence of contributory negligence on her part by affirmative evidence, and the burden of proof in regard to the same rests upon the plaintiff.

Upon the trial of such an action, it was shown that the plaintiff was driving an uncovered buggy, and as she approached a railroad crossing, while some distance therefrom, she observed two freight trains upon the track furthest from her. She stopped her horse between 170 and 250 feet from the track nearest to her. After the freight trains went by on the furthest track, the plaintiff testified that everything was all clear as far as she could see ; that she listened for a minute or two, and looked both ways to see if any trains were coming. There was no sound given, no bell rung or whistle blown. She started up her horse, which was going on a slow walk, and under her control. While she was approaching the first track she looked up and down and did not hear any warning, and was struck and injured by a train which was going at the rate of forty miles an hour.

It was also shown upon the trial, that, sitting in a buggy 25 feet from the railroad crossing, the tracks could be seen 1,100 feet; 50 feet away they could be seen for a distance of 1,300 feet, and at a distance of 100 feet from the tracks they could be seen for a distance of 180 feet, and that standing on the crossing the tracks were clear to the eyesight to a whistling post 1,300 feet away.

*Held,* that the defendant's motion for a nonsuit was improperly denied;

That the plaintiff failed to establish the fact that she was free from contributory negligence on her part, as if she had looked up and down the track before attempting to cross the same. she would have seen the approaching train, and would have had ample time to stop, and if she did not look it was negligence on her part not to have done so.

APPEAL by the defendant, The Fitchburg Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Rensselaer on the 25th day of November, 1893, upon the verdict of a jury, rendered after a trial at the Rensselaer Circuit.

*T. F. Hamilton,* for the appellant.

*James C. Fursman,* for the respondent.

HERRICK, J.:

This is an appeal from a judgment entered upon the verdict of a jury in favor of the plaintiff and against the defendant for the sum of $525.84, damages and costs.

In October, 1892, the plaintiff, while driving across the tracks of the defendant, was struck by one of defendant's trains and thrown from the buggy in which she was riding and sustained injuries, for which she brought this action.

At the time in question she was driving in an uncovered buggy with her mother; she had a single horse, which was gentle, easily managed, not afraid of the cars, responsive to the whip and lines, and stopped readily when spoken to, and the plaintiff had full control over him at the time in question.

The highway where the accident happened is crossed by two tracks belonging to the defendant; they are about 260 feet apart.

As she approached the crossing, and while at some distance therefrom, she observed two freight trains upon the track furthest from her; upon observing them she stopped her horse. At or near the place where she stopped there are two houses situated on the highway, one distant about 170 feet from the first track and the other about 250 feet. She says: "Before we came to these tracks we stopped and we saw two freight trains, one after the other, on the lower track going by, and we stopped until these went by and everything was all clear as far as we could see, and then we listened for a minute or two, I do not know quite so long, but then listened long enough to hear for noise and to see if any trains were coming. I looked both ways to see if any trains were coming, and I know no more until we went on and got struck with the trains. There was no warning or sound given; no bell rung or whistle blown. The

carriage and horse both stopped. We were waiting to see if there was any danger. We stopped for the trains to go by, and then we looked both ways and listened and then went on and were struck by this train. It was about quarter to nine in the morning. I looked both ways, up and down, to see if any more trains were coming and did not see any more, so went on; then not knowing any more until we were struck·by the cars."

She was familiar with the crossing and had crossed there a great many times. She says: " I think we stopped by the second house from the track, or near there; I could not say right in front of it nor near there; I don't know whether a little past; I could not say just how far from the track; I should say about three hundred feet from the track. It is my best recollection now that we stopped before we got to the last house. We did not stop from that time until the accident happened. Horse was going slow and on a slow walk. I had full control over the horse. When I stopped there were two trains on the lower track; after they passed I looked ahead. I looked both ways on this other track; up and down on the first track we had to cross. I could not see anything from that point on account of the lay of the land — the physical barrier. I could see down the west-bound track, and I could see those trains going by. My mind was on the first track we were crossing because I knew we were in danger. When I stopped near the house I could not see up the west-bound track at all; I could not see anything but the track road ahead of me; the first track I could not see that; I could see the other track — the east-bound track — plainly with those freight trains coming east. Then I started on a walk. By the Court: Q. Which way did you look? A. Up and down. Q. After you started? A. Yes, sir. Q. While you approached this track? A. Yes, sir; I did not hear any warning; there was no warning given me."

There is a whistling post on the west-bound track [this is the track where the accident happened] 1,300 feet from the crossing.

Sitting in a buggy 25 feet from the crossing the tracks can be seen for a distance of 1,100 feet towards the whistling post; 38 feet away it can be seen 1,100 feet; 50 feet away the tracks can be seen for a distance of 1,300 feet. At a distance of 100 feet from the track it can be seen for a distance of 180 feet. Standing on the

crossing the track is clear to the eyesight to the whistling post, and standing twenty feet distant from the track the whistling post can be seen.

The train by which the plaintiff was struck was a passenger train, going at the rate of about forty miles an hour.

As to the facts herein stated there was no controversy upon the trial. The defendant moved for a nonsuit at the close of the plaintiff's case, which was denied, and again at the close of all the evidence in the case, upon the ground that no negligence was shown on the part of the defendant, and that there was no evidence of the absence of contributory negligence on the part of the plaintiff, which was also denied.

I think the court erred in overruling the defendant's motion for a nonsuit at the close of all the evidence.

To maintain her cause of action it is necessary for her to establish the absence of contributory negligence by affirmative evidence. It is an issue in the case where the burden of proof rests upon the plaintiff.

In the case of *Bomboy* v. *N. Y. C. & H. R. R. R. Co.* (47 Hun, 425) the plaintiff there testifies that he had been looking for the train, but did not see any; that when he got near the railroad he looked up and down, but did not see any train. He testifies that he looked up and down the track when he was distant about twenty feet, and again when about fifteen feet, and still again when about ten feet, but saw no train; his horses were upon a walk. The evidence further shows that at twenty-six feet distant therefrom he could see down the track a locomotive 320 feet, and could have a full view of an approaching train if he had looked over his left shoulder; and, at the rate of speed at which he was going, he would take between four and five seconds to go twenty-six feet; and there was no object in view to distract his attention. Notwithstanding his testimony the court stated: " It is highly probable that he did not look during that space of twenty-six feet, but, if he did, he must have seen the train." It is important to notice that, according to his testimony, his horses barely stepped one or two feet upon the track, and had stopped of their own accord, and that then for the first time he saw the locomotive just upon him. The court further says: " That we must hold that the plaintiff was not free from con-

tributory negligence. He had ample control of his team and of his own actions, was not put off his guard or distracted by any act of the defendant, could easily look, had ample time to do it, and heedlessly exposed himself and property to injury."

In this case, when at the distance of twenty-five feet from the crossing, the plaintiff had a clear view of the track for 1,100 feet, while in the *Bomboy* case, at twenty-six feet from the track only a view of 320 feet could be obtained.

At fifty feet away the smokestack of the engine could be seen a distance of 1,300 feet from the point where she was struck by the locomotive.

As was stated by the court in the *Bomboy* case, she had ample control of her team and of her own action, and she was not off her guard nor distracted by any act of the defendant, and could have easily looked, had ample time to do it; and if she had looked during that time she must have seen the train, and, in the language of *Woodard* v. *N. Y., L. E. & W. R. R. Co.* (106 N. Y. 369, 374), she had only to " look and pause to be safe," at any time when within fifty feet of the defendant's tracks. (See, also, *Tucker* v. *N. Y. C. & H. R. R. R. Co.*, 124 N. Y. 308; *Daniels* v. *Staten Island R. T. Co.*, 125 id. 407.)

It being indisputable that she could have seen the train for over 1,000 feet at any time after she reached a point fifty feet distant from the track if she had looked. I think it must be held, in view of the cases I have referred to, that she did not look, excepting straight in front of her, but went heedlessly on.

If she had looked she would have seen the locomotive and have had ample time to stop and be safe; if she did not stop, it was negligence ; if she did not look, it was negligence.

For the error, therefore, in denying the motion for a nonsuit, the judgment should be reversed and a new trial granted, costs to abide the event.

MAYHAM, P. J., and PUTNAM, J., concurred.

Judgment reversed and new trial granted, costs to abide the event.