KITTIE CROSBY, as Administratrix, etc., of WILLIAM CROSBY, Deceased, Appellant, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Respondent.

*Contributory negligence — its absence may be inferred from circumstances — violation by a railroad company of a city ordinance as to speed.*

Upon the trial of an action brought to recover damages resulting from a death caused by injuries alleged to have been received by reason of the negligence of a railroad corporation, the absence of contributory negligence upon the part of the deceased may be shown from circumstances.

If the facts and surrounding circumstances proved are such as to reasonably indicate that the accident might have occurred without negligence on the part of the deceased, the question as to contributory negligence should be determined by the jury.

Where a city ordinance provides that cars shall not be propelled by steam within the city limits at a greater rate of speed than one mile in eight minutes, and there is evidence in a case which would warrant a jury in finding that the train in question was moving over a street crossing at the rate of twenty-five miles an hour, it is erroneous to nonsuit the plaintiff.

APPEAL by the plaintiff, Kittie Crosby, as administratrix, etc., of William Crosby, deceased, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Onondaga on the 13th day of November, 1893, upon the dismissal of the complaint directed by the court after a trial at the Onondaga Circuit before the court and a jury, with notice of an intention to bring up for review upon such appeal an order of said court made on the trial of the action dismissing the complaint and granting a nonsuit.

*Ceylon H. Lewis*, for the appellant.

*Frank Hiscock*, for the respondent.

HARDIN, P. J. :

Plaintiff's intestate was killed by an engine of the defendant passing easterly on its track while crossing Geddes street in the city of Syracuse at about five-forty P. M. of the 11th day of November, 1892. He had been drawing materials to the canal and was passing from the canal bridge southerly along Geddes street; in his vicinity were five men on foot who stopped on the west side of the street to avoid the passing and repassing of a switch engine and to discover that the street was free from moving trains. The deceased stopped his horse, but at just exactly what distance from the tracks does not appear, though at the trial it was assumed to be about sixty-six feet. The train that caused the injury was approaching from the west on a curve, and with the headlight lighted, at a speed shown by some of the evidence of thirty miles an hour on a down grade. When plaintiff started to cross he was required to pass directly in front of the headlight of the switching engine, a few feet from it, so near as to be affected by the glare of its light. He passed over the switch track. There was a Solvay train near to him which usually crossed before No. 30, the train which caused the injury, but on this occasion at a speed of thirty miles an hour (as the jury might have found) No. 30 came to the crossing ahead of its schedule time. There had been flags used at the crossing to the knowledge of the deceased, but no flagmen were in attendance in discharge of such duty on this occasion. The men who usually performed such services were attending to other duties. The five men who were on the sidewalk awaiting an opportunity to pass apparently did not discover train No. 30 until it was within seventy-five feet of the crossing, although they stood within five feet of the track on which the train was approaching. They narrowly escaped being injured. They point out the difficulties of seeing the approaching train. O'Neil, a witness called in behalf of the plaintiff, in describing the occurrences just preceding the accident, states that Horan was near to him, a little in front, and that he looked up the track and saw the passenger train coming and it was then about seventy-five feet west of the witness, and at that time there was no flagman there, and that

as he saw the train he looked down the track to see if the track was clear and he saw a horse and wagon on the track and a man in the wagon; it was about in the center of the track; the forward wheel was in the center of the track that the train was on, the south track, at the time I looked to see. And he says when he first saw the train it was about seventy-five feet to the west, and then he saw the wagon get hit with the train, and that it only took about two seconds to accomplish all the things which he thus stated. He says that the deceased "had the whip or lines in his hand when I saw him; he was looking, facing towards the train. He was turned in his seat (indicating); and he was crouched over (indicating). The front wheels of his truck about that time were about in the center of the track; then the train struck his wagon; the train struck the hind wheels; at that instant I was probably fifteen feet from the south track." There was some evidence tending to show that it was "a very dark night;" and one witness says that he could not see the outlines of the train; that he could just see the headlight, and did not hear the ringing of the bell. The switch engine had been passing up and down, and it had in use a blower, which caused it to make considerable noise, interfering with the discovery of other sounds; and there is some evidence that the wind was in the east, which would carry the escaping smoke and steam in the direction of the approaching train, to the westward, and distribute it along the tracks to the west of the deceased; and there were several buildings on the west side of Geddes street which would obstruct the view of a person passing over the canal bridge to the crossings. The witness Horan testified that he was at the crossing and looked to the west and saw the train near the switch shanty, a little west of it, and that he called out to look out for the train, and as he looked he saw Crosby; the front wheels of his truck were just going over the north rail of No. 1 track. The witness adds: "He turned around and looked up like that (indicating), and got up like that (indicating), and was going to hit the horse. That is the last I saw of him. Q. Looking towards No. 30? A. Yes, sir." And he adds: "He was looking up like that (indicating); he had the whip up like that (indicating), and that is the last I saw of him." It appears that the trial judge put the nonsuit on the ground that the plaintiff was not free from

contributory negligence. We think, under the evidence disclosed in the appeal book, that the question of whether the deceased was guilty of contributory negligence was one of fact, which should have been submitted to the jury. Since the trial at the Circuit we have decided *Pitts* v. *The N. Y., L. E. & W. R. R. Co.* (79 Hun, 546), and in that case it was held by this court that "the absence of contributory negligence may be shown from circumstances." It was also said in that case that "if such facts and surrounding circumstances are shown as reasonably indicate or tend to establish that the accident might have occurred without negligence on the part of the deceased, the question of contributory negligence is for the jury, although there were no eye witnesses of the accident." The opinion delivered in that case sufficiently refers to the authorities which are relied upon to support the propositions of law laid down in that case. We think the evidence in this case was such that the trial judge, in accordance with the views expressed in the case to which we have just referred, should have submitted the question whether the deceased was free of contributory negligence to the jury.

In *Miller* v. *The N. Y. C. & H. R. R. R. Co.* (82 Hun, 165; S. C. affd. by the Court of Appeals May, 1895) we referred to and followed the doctrine of *Pitts* v. *The N. Y., L. E. & W. R. R. Co. (supra).* (See, also, *Chisholm* v. *The State,* 141 N. Y. 246.)

(2) It appeared by the evidence that one of the ordinances of the city of Syracuse, in force at the time of the trial, provided, viz.: "No railroad company whose cars are propelled by steam shall propel said cars within the city limits at a greater rate of speed than one mile in eight minutes." It was assumed by the trial judge that the evidence would warrant the jury in finding that train No. 30 "was approaching the crossing from the west at the rate of twenty-five miles per hour."

We are of the opinion that the evidence offered at the trial would have warranted the jury in finding the defendant guilty of negligence which caused the death of the plaintiff's intestate. We, therefore, order a new trial.

MARTIN and MERWIN, JJ., concurred.

Judgment and order reversed and a new trial ordered, with costs to abide the event.