THOMAS B. BELCH, Respondent, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

*Contributory negligence — proof of freedom from, required of the plaintiff.*

In an action brought to recover damages resulting from injuries caused by the alleged negligence of the defendant, it appeared that the plaintiff was driving east towards double tracks of the defendant's railroad, which ran north and south; that the track first reached by the plaintiff was used by trains going south, and that the plaintiff knew that a train was at the time nearly due upon the further or north-bound track; that when he reached the first track a wheel of his carriage slipped off the axle, which became wedged between the planking and one of the rails of that track; that it was dark and took him some little time to find the wheel and to put it back upon the axle; that he then looked for the nut but could not find it; that he went to the horse's head and in a moment heard the noise of the train coming on the north-bound track, was struck by it and injured.

It further appeared that the approaching train could be seen at a distance of half a mile, and that the noise of its approach could be heard for at least that distance; that the plaintiff made no attempt either to back his horse from the south-bound track nor to drive, after having put his wheel on temporarily, over the north-bound track.

*Held,* that he had not shown himself to be free from contributory negligence and was not entitled to recover.

APPEAL by the defendant, The New York Central and Hudson River Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Ulster on the 4th day of May, 1895, upon the verdict of a jury rendered after a trial at the Ulster Circuit, and also from an order entered in said clerk's office on the 23d day of April, 1895, denying the defendant's motion for a new trial made upon the minutes.

*F. L. Westbrook,* for the appellant.

*E. Countryman,* for the respondent.

HERRICK, J.:

This is an appeal from a judgment entered upon the verdict of a jury in favor of the plaintiff and against the defendant, and from an order denying a motion for a new trial. The action is one for alleged negligence whereby the plaintiff lost one of his hands.

The accident happened on the 14th of August, 1893, at a place where a highway called "People's road" crosses the tracks of the defendant, at a point about one mile north of the village of Saugerties. "The People's highway" runs east and west, and the defendant's tracks north and south. The westerly track is known as the south-bound track, that is, the track on which trains run that are going southward, and the easterly track is known as the north-bound track, that is, the track on which trains run going to the north.

The plaintiff approached these tracks from the west, and testifies that when he was within fifteen or twenty feet of the westerly track he stopped his horse and looked and listened for approaching trains, but neither saw nor heard any. He then drove on, and as he was crossing the westerly track the right forward wheel of his carriage slipped off its axle and his carriage tipped and threw him out. The plaintiff was familiar with the crossing; he knew that there was a train that left Saugerties about eight-twenty-eight in the evening, and that it was then in the neighborhood of half-past eight. He says that he realized the necessity of getting his horse and wagon off the tracks. He says that he went to his horse's head and looked and listened for approaching trains, but neither heard nor saw any. He attempted to lead his horse off the track, but found that the carriage was in some way fastened; he then went to the axle where the wheel was off and found that it had fallen between the planking of the crossing and the west rail of the south-bound track; he lifted it up out of its place, and then groped around for the wheel, which he finally succeeded in finding. He had some difficulty in placing the wheel on the axle, but finally succeeded in getting it on.

He then groped on the ground hunting for the nut, stooping over with his hands on the ground; he did not succeed in finding it; he then returned to his horse's head. He says: "I went to my horse's head and reached out; whether I caught the bridle or the rein I can't say which, but in my attempt to reach I saw a flash of light, and heard a roar and a wh-r-r-r, something in that style; and I was whirled around with my right hand in under me, and thrown down on my stomach, and the breath was knocked out of me, and my left arm and hand were extended in that position (ind.); I was in a dazed or semi-dazed condition. I saw the receding lights of a disappearing train in the distance; I mean the rear light of the

train — some colored lights; I saw them going away from me towards the north."

He states that the interval of time between the flash of light and the roar heard by him, until he went down was imperceptible. When he got up his hand was hanging from his arm by a shred of skin, and was subsequently cut off.

The night was dark, but not a stormy one. From the crossing the tracks of the defendant run straight south for a distance of 2,800 feet to a curve in the road, beyond which the tracks cannot be seen. From the crossing where the accident happened to such curve the view is clear and unobstructed. No whistle was blown by the locomotive, and there is a conflict of testimony as to whether any bell was rung. The testimony is practically undisputed that the headlight of the locomotive can be seen from the crossing to the curve, and that the noise of an approaching train can be heard for more than that distance, one witness testifying that it could be heard when it started to leave the station at Saugerties, about one mile away.

That there was a light in the headlamp of the locomotive is undisputed.

I will not discuss the matter as to whether there was negligence on the part of the defendant, but for the purposes of this appeal assume that there was sufficient evidence of negligence to warrant the verdict of the jury. It is incumbent upon the plaintiff to establish affirmatively the absence of contributory negligence on his part. Has he done so? He knew that he was in a place of danger; he knew it was incumbent upon him to get out of it as soon as possible; to this he testifies. Did he make sufficient effort? Did he take sufficient precaution?

His first effort to remove his horse and carriage from the track was futile, because the axle had become firmly fixed between the planking and the rail, but when he had removed it from that position there was no longer any obstacle to removing them from the track, either by promptly driving over both tracks or backing them out of danger. He did neither. He first went in pursuit of the wheel to put it on the axle; this took some little time; again he consumed some time, as he testifies, in putting it on the axle after he had found it. Then again he could have driven across the tracks or

backed from them, but he did neither. He then consumed some time groping upon the ground in endeavoring to find the nut to place upon the axle.

On each of these occasions he is particular to say that he looked to the north and the south, and listened to see if he could hear anything of an approaching train or trains, but neither saw nor heard anything. He was then on the south-bound track; he then went to his horse's head, which he testifies was "on the third rail from the west," which would be the westerly rail of the north-bound track, and was instantly struck.

It has been held to be the duty of a person approaching railroad tracks to look and listen for approaching trains. It may be, perhaps, assumed that if one performs that duty and sees or hears nothing, and goes on, that he has discharged every duty that is incumbent upon him to relieve himself from the charge of contributory negligence; and it is possible, if the plaintiff's story as to what he did is absolutely true, that he performed every duty that devolved upon him, under the circumstances, to protect himself against danger. But after carefully considering the evidence I cannot persuade myself that the story is true. It seems to be inconceivable that if he had done what he says he did do, that he should have neither seen nor heard the approach of the train which injured him.

It needs no evidence to satisfy me that the approach of a railway train can be heard for a considerable distance, particularly when there appears to be no other noise mingling with it to distract attention. There is testimony in this case that the approach of a train could be heard for over three-quarters of a mile. It needs no evidence to satisfy me that the light from a locomotive headlamp can be seen for a long distance when there is nothing to intercept the view. There is evidence in this case, which is undisputed, that such headlight could be seen for a distance of 2,800 feet. The ability to hear the noise and see the light of an approaching train are undisputed facts with which the testimony of the plaintiff, that he looked and listened and neither saw nor heard anything, comes in conflict.

From our own knowledge, as well as the testimony of the witnesses in this case, we know that a person on the tracks of a railroad

can hear the noise of an approaching train if he listens. From our own knowledge we know that a person upon the tracks of a railroad, with his view unobstructed, can see the light of a locomotive headlamp, if he looks, and there is one there to be seen ; and yet we are asked to believe that the plaintiff looked and listened, but heard and saw nothing of the approach of the train, although it could be seen for a distance of 2,800 feet ; that he walked from a position of security on the west track to the east track, neither seeing nor hearing this approaching train until it struck him, only seeing the light and hearing the noise almost the instant that it was upon him.

The approaching train could be seen when at a sufficient distance away from him to enable him to avoid it if he had looked. And if he had looked he must have seen it ; if, when he placed the wheel on his carriage, or when he ceased hunting for the nut, and before he went to his horse's head, he had looked, he must necessarily have seen the light, and when he says he did look both ways, and did not see or hear the train until it struck him, I do not believe his story, and consequently cannot see that he took reasonable precaution to avoid the accident. (*Stopp* v. *Fitchburg R. R. Co.*, 80 Hun, 178, and cases cited.)

Judgment and order reversed and a new trial granted, costs to abide the event.

MAYHAM, P. J., and PUTNAM, J., concurred.

Judgment reversed and new trial granted, costs to abide the event.