maintain, and educate the plaintiff, and to treat him as his own son, up to the time he had attained his nineteenth year. Plaintiff's counsel says that plaintiff "continued in defendant's family under this agreement, brought up in idleness and luxury, with no idea of self-support." Plaintiff testified that $1,000 or $1,200 a year would be a reasonable amount for his support in the manner he had been supported by defendant. We have not been cited to, nor are we able to find, any authority for the maintaining of an action of this character, nor can we conceive of any principle of law upon which it may be upheld. It is a matter of no consequence to determine whether the agreement should be limited to the time of the plaintiff's majority, or to the time when he became of sufficient capacity to, or ability to, support himself. Assuming, however, that the defendant's obligation continued during the plaintiff's infancy, the facts are nevertheless wholly insufficient to establish a cause of action. There is no proof of any breach of the agreement as alleged in the complaint. The breach of the agreement is that the defendant did not, after plaintiff attained his nineteenth year, support and maintain him as he would his own son. Non constat but that defendant, under the same state of circumstances, would have compelled his own son to support himself. Surely the plaintiff can claim no other or greater privilege, benefit, or advantage than might be lawfully or rightfully refused by defendant to his own son. It would be a novelty in the law for a son to maintain an action against his father to compel him to furnish supplies of food and clothing, or to advance him the requisite funds for that purpose. A parent is bound to support his minor child, and is entitled to his services and to receive earnings. But here the defendant is not entitled to the plaintiff's services or his earnings, and yet it is contended that defendant is under a legal obligation to support the plaintiff in idleness and luxury. There is no reciprocity here, nor any consideration whatever. The evidence shows that defendant has faithfully fulfilled all the obligations or duties that could be reasonably expected or required of him.

The respondent insists that this appeal should be dismissed on the ground that the appellant cannot prosecute the appeal as a poor person. It is provided by section 1294 that any party aggrieved may appeal from a judgment or order. The appellant had a right to appeal from the judgment herein, but he cannot avail himself of the privilege of prosecuting the appeal as a poor person, so as to be absolved from the liability for costs of the appeal. Morse v. City of Troy, 38 Hun, 301. The judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur.

---

(8 App. Div. 402)

SEELEY v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. July 30, 1896.)

1. EVIDENCE—OPINION.
　　The question whether a witness could have heard from a certain place the bell on defendant's locomotive, if it had been rung on approaching

a certain crossing, or the whistle, if it had been blown, does not call for a mere expression of opinion.

2. DEATH BY WRONGFUL ACT—EXCESSIVE DAMAGES.

A verdict for $6,000 for the death of plaintiff's daughter is excessive, where the only evidence as to the amount of damages is that plaintiff was about 61 years old, and his daughter 19 years old; that plaintiff was a machinist, and his daughter was an industrious girl, earning $7 a week, which she gave her mother to be used in supporting the family.

Appeal from trial term, Monroe county.

Action by Lawrence Seeley, as administrator of Nellie Seeley, deceased, against the New York Central & Hudson River Railroad Company, to recover damages for the death of plaintiff's intestate. From an order denying a motion for a new trial, made on the minutes of the court, after a verdict in favor of plaintiff for $6,000, defendant appeals. Reversed.

This action was brought by the plaintiff to recover damages sustained in consequence of the death of his intestate and daughter, Nellie Seeley, who was struck and almost instantly killed by a locomotive upon the defendant's road, about 9 o'clock in the evening of July 10, 1895. The intestate was a bright, healthy girl, 19 years of age, who was employed at the Hess Tobacco Factory, in Rochester, and resided with her father, upon Dengler street, in that city. Upon the night in question, a young acquaintance, by the name of Mamie Reichenberger, called at the house of the intestate, and, shortly after 9 o'clock, they started together for the house of Miss Reichenberger. They passed along Dengler street until they came to Saxton street, which is a highway, running north and south, within the corporate limits of the city of Rochester, and which is crossed at right angles by the defendant's four tracks, a short distance south of which it is also crossed by the two tracks of the Buffalo, Rochester & Pittsburg Railroad. Saxton street is 61 feet in width, and the east sidewalk is 4 feet 8 inches in width. From the north rail of the Buffalo, Rochester & Pittsburg Railroad to the southerly track of the defendant (a distance of about 25 feet), there is practically an unobstructed view to the west as far as the eye can see, and likewise to the east for a distance of about 1,400 feet, although the view in the latter direction is interrupted for a short space by a flagman's shanty. The girls were walking north on the east sidewalk of Saxton street, with their arms locked, and, as they approached the defendant's tracks, a passenger train passed, going west upon track No. 2. They stopped when within about 5 feet of track No. 1, and waited until this train had crossed the highway, and then, as testified to by Miss Reichenberger, they both looked to the west, and then to the east, and, seeing and hearing no train approaching, they attempted to cross the track, when they were struck by a passenger train going east upon track No. 1, with the result that Miss Reichenberger was slightly injured, and the plaintiff's intestate was so seriously hurt that she died soon thereafter. The evidence tended to show that the train going east was running at a high rate of speed; that no whistle was blown until just before the accident occurred; and there was the usual conflict of evidence with regard to the ringing of the bell. It also appeared that the night was quite dark, but that the headlight of the locomotive was lighted, and that there were lights inside of the cars attached to the train going west. At the close of the plaintiff's case, a motion was made by the defendant for a nonsuit, upon the usual grounds, which was denied; and the case was finally submitted to the jury, which rendered a verdict in favor of the plaintiff for the sum of $6,000.

Argued before HARDIN, P. J., and ADAMS, WARD, and GREEN, JJ.

Edward Harris, for appellant.
P. Chamberlain, for respondent.

ADAMS, J. That there was sufficient evidence of defendant's negligence in its management of the train which caused the death of the plaintiff's intestate to raise a question of fact for the jury is not seriously controverted, but it is nevertheless insisted that the plaintiff should fail in his action, for the reason that he omitted to show that his intestate was free from contributory negligence; and, certainly, the case, upon this branch of it, is by no means free from embarrassment. In view of the undisputed fact that a person standing in Saxton street, at any point south of the defendant's south track, and within 20 feet thereof, would have an unobstructed view of the track to the west as far as the eye could reach, it is scarcely conceivable that the intestate could have come into collision with the train which struck her had she been at all mindful of the obligation which rested upon her of exercising some reasonable degree of care for her own protection; and yet we have the evidence of her companion, Miss Reichenberger, who testifies in the most unqualified manner that, when they reached a point about five feet south of track No. 1, they stopped; that she then looked to the west, and then to the east; that Nellie looked the same way she did; and that, not seeing or hearing the approaching train, they started to cross the track, and were struck. As was said by the learned trial justice, in his admirable charge to the jury, this evidence makes it necessary that one of two conclusions should be adopted: Either this girl's statement was untrue, or else the train was approaching at such a rate of speed and under such conditions as to render its approach, to some extent at least, unnoticeable. The alternative which was thus presented to the jury was by them resolved in favor of the latter theory; and although we may think, from a reading of the case, that their conclusion is not in harmony with the one we should have reached had we been in their place, and although we may regard the question of contributory negligence presented by the facts of this case as one approaching very close to the border line which separates a question of fact from one of law, yet we are not prepared to say that error was committed in the treatment which it received at the hands of the trial court.

It is to be borne in mind, as we consider this branch of the case, that the night was, as all, or nearly all, the witnesses testify, an extremely dark one; that the train was approaching at a high rate of speed; that, as the plaintiff's witnesses testify, no bell was rung or whistle blown; that there were a number of switch and semaphore lights burning west of Saxton street; and that another passenger train was just passing west upon track No. 2, with the light of which shining through the car windows it was not impossible to have confused that which came from the headlight of the locomotive drawing the eastern train. But, whatever explanation may be adopted as regards the failure of the plaintiff's intestate to avail herself of the opportunity which was afforded by the conditions surrounding her to observe the approach of the train which struck her, the fact remains, uncontradicted by any oral proof, that the girls did look in both directions before stepping

upon the track; and the rule seems now to be pretty well settled in this state that, where this is done, a question of fact is generally created, and that a recovery is not necessarily impossible because it can be shown that an approaching train might and ought to have been discovered by one who was upon the lookout for it. Beckwith v. Railroad Co., 54 Hun, 446, 7 N. Y. Supp. 719, 721, affirmed 125 N. Y. 759, 27 N. E. 408; Miller v. Railroad Co., 82 Hun, 164, 31 N. Y. Supp. 317, affirmed 146 N. Y. 367, 41 N. E. 90; Parsons v. Railroad Co., 113 N. Y. 364, 21 N. E. 145; Greany v. Railroad Co., 101 N. Y. 419, 5 N. E. 425.

In the case last cited, the learned judge who wrote the opinion uses this language:

"The plaintiff is not bound to see. He is bound to make all reasonable efforts to see that a careful, prudent man would in like circumstances. He is not to provide against any certain result. He is to make an effort for a result that will give safety,—such effort as caution and prudence will dictate. I know of no exception to the doctrine that where there is any evidence, direct or inferential, of care or caution on the part of the person injured, the question whether it is in compliance with that rule is for the jury."

The only exception to the admission of evidence to which our attention has been directed resulted from the ruling of the trial court upon a question put to the witness Boss, who lived in the vicinity of the crossing, and who, after stating his opportunity for hearing, testified that he heard no bell rung upon the locomotive which struck the intestate. Upon his redirect examination, he was asked by the court this question: "From what distance west of your house have you heard the bell ring or the whistle blow?" The question was objected to. The objection was overruled, and the witness answered: "Some trains, you would hear them from York street; and then, again, you would not hear them until they got right close to you." We have recently had occasion to hold, in a case similar to this, that a witness might testify that he could have heard a bell ring from a certain distance; and we think the evidence sought to be obtained from this witness was of the same character as that which we held proper in the case referred to. Stever v. Railroad Co. (not yet officially reported) 39 N. Y. Supp. 944. But, however that may be, no possible harm could have resulted from the answer which the witness gave to the question objected to.

We come, therefore, to the consideration of the only remaining question in the case, which arises upon the defendant's contention that the damages awarded to the plaintiff are excessive in amount. It is both a delicate and a difficult matter to determine the full measure of the plaintiff's pecuniary loss, resulting from his daughter's death, by any standard which is available for that purpose; and yet we know that his recovery in this action must be limited by purely pecuniary considerations, and that it is the duty of both courts and juries to keep this fact in mind when attempting to solve a problem surrounded by such obvious difficulties. This duty is rendered even more imperative now that all statutory limitation has been removed by the recent change in our organic law, and therefore it is especially important that courts sitting in review should carefully, but rigidly, scan the verdicts of juries, to see that

their conclusions in this particular are founded upon justice and reason, and not upon prejudice and sentiment.

The facts in this case, so far as they bear upon the question of damages, are that the plaintiff was about 61 years of age, and his daughter 19; at the time of the accident. The former was following the occupation of a machinist, and the latter was a bright, vigorous, and industrious girl, who was earning seven dollars a week, which she bestowed upon her mother, to be used by her in supporting the family. No evidence is furnished of the age or physical condition of the mother, or that there were any other children than the decedent; nor does it appear that the decedent ever performed any services at home which were of any value from a domestic point of view. So far as we are advised by the record, she simply earned a certain amount of money, of which she, in common with her father and mother, had the benefit. The important question, therefore, which the jury was called upon to determine, was, what reasonable expectation of pecuniary benefit to be derived from the life of the deceased did the facts above recited justify? Their conclusion, as represented by their verdict, was that the actual money value of the deceased to the plaintiff was $6,000; and, as has been seen, the only basis which could properly have justified this conclusion was that which the evidence furnished of her earning capacity. We have endeavored, by various calculations, which have been made in an atmosphere unaffected by appeals to passion, prejudice, or sympathy, to reconcile the result reached by the jury with our sense of justice; but, when we come to consider the expectancy of life which this plaintiff had a right to indulge in, we find that, even assuming that he would have received the entire amount of his daughter's earnings during that period of time, the aggregate would fall far short of the amount awarded by the verdict; and when we also consider that this source of income was quite likely to have been interrupted by loss of employment, or the marriage, death, or attainment of her majority, by the daughter, we are unable to resist the conclusion that the jury were, unconsciously no doubt, swayed by some other considerations than those which ought to have governed them, and we therefore feel constrained to revise their verdict. This determination is reached with some hesitation, but there can be no question as to either the power or the duty of the court to reduce a verdict which it deems clearly excessive, and the conceded facts of this case seem to leave no other alternative. Coppins v. Railroad Co., 48 Hun, 292, affirmed 122 N. Y. 557, 25 N. E. 915; Bailey v. Railroad Co., 80 Hun, 4, 29 N. Y. Supp. 816. We think that $4,000 would be a most liberal estimate for the pecuniary damages sustained by the plaintiff in consequence of the death of his intestate, and our conclusion is that the order appealed from should be reversed, unless the plaintiff stipulates to reduce the recovery to that amount, but that, in the event of his so stipulating, the order appealed from should be affirmed, without costs of this appeal to either party.

Judgment and order reversed, on the ground that the damages are excessive, and a new trial ordered upon payment of costs by

the defendant, unless the plaintiff shall stipulate to reduce the verdict for damages to $4,000, in which event the order and judgment, as so modified, are affirmed, without costs of this appeal to either party. All concur.