and correlative duty on the other, create the necessary privity, and justify the implication of a promise by the defendant to do that which justice and equity require. It is immaterial, also, whether the original possession of the money by the defendant was rightful or wrongful. It is sufficient that the duty exists on his part, created by the circumstances, to account for and pay it over to the plaintiff. Nor is this form of action excluded because, in a general sense, there is a relation of trust between the parties arising out of the transaction."

To the same effect is Chapman v. Forbes, 123 N. Y. 532, 26 N. E. 3.

It is alleged by the defendant that he has paid the money in dispute to his client. But this is no defense, since he could not discharge or evade his obligation to pay the money to the plaintiff by handing it over to another. Upon the admissions in the pleadings and on the trial appearing by the record, the plaintiff was entitled to judgment.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.

---

(13 App. Div. 483.)

### BURNS v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. January 27, 1897.)

RAILROADS—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE.

Contributory negligence in going on a railroad crossing appears as a matter of law, though plaintiff testifies that he looked just before reaching the crossing, and saw no locomotive approaching, and the locomotive had no headlight, and gave no warning of its approach, where it is shown that the accident happened at night, but when it was, by reason of moon and electric lights, almost as light as day; that plaintiff waited about 25 feet from the track for a train to pass; that from where he waited the track, in the direction from which the locomotive came, was visible for 100 feet, and for an increasing distance as he approached the track; and that a person walking 10 feet behind plaintiff saw the locomotive more than 100 feet away as plaintiff came to the track, and shouted to him to look out, but that plaintiff went on without heeding the warning. Ward, J., dissenting.

Action by John Burns against the New York Central & Hudson River Railroad Company to recover for personal injuries. Plaintiff was nonsuited at the Orleans county trial term, and moved for a new trial on exceptions ordered heard by the appellate division in the first instance. Denied.

This action was brought to recover damages which the plaintiff claims to have sustained in consequence of a personal injury received by him while attempting to cross the defendant's railroad at a point where the same intersects a public highway in the village of Medina, Orleans county, known as "West Street." This street runs north and south, and at a distance of about 600 feet east and west thereof are two other streets, running parallel with West street, designated, respectively, as "Shelby" and "Gwinn" streets. The defendant's tracks, five in number, cross these three streets at right angles; the northerly one being the main or through track, and the other four being branch tracks. The one next south of the through track is called the "Main Branch," and the others are designated as "Nos. 1, 2, and 3"; this being the order in which they are located with reference to the main branch. As these tracks are laid across West street, the distance between the south rail of the main branch and the north rail of track No. 1 is 9 feet 7½ inches. West street is 66 feet in width, and just east of the east line of the street there is a flagman's shanty, standing between tracks Nos. 1 and 2. The passenger depot is also located a short distance east of the street and north of the north track. At about 11 o'clock on the night of April 10, 1895, the

plaintiff and one Johanna Lahey were walking north upon the east sidewalk of West street. They had been spending the evening at a house in the vicinity and south of this crossing, in company with Terrence O'Brien and Kate Kerr, who were also walking a short distance behind them. As these four people were proceeding upon their way they discovered a long freight train going west across the street upon the main or through track. This train did not stop at the station, and was going at the rate of about 15 miles an hour. When the plaintiff and his companion reached the west corner of the flagman's shanty, they stopped to allow the freight train to pass, and, as the rear end of it was about to cross the east line of the street, they started forward, and, as they stepped onto the main branch track, a locomotive coming from the west upon that track struck them, with the result that Miss Lahey was killed, and this plaintiff received the injuries of which he complains. At the time of the accident there were cars standing upon the west side of the street upon tracks Nos. 1, 2, and 3; those upon track No. 1 coming close to the west line of the street. It was a clear night. The moon was shining brightly, and the incandescent lights at the depot were lighted. The evidence tends to show that the locomotive which struck the plaintiff was running at the rate of about 10 to 15 miles an hour, that it gave no signals of its approach, and that the headlight thereof was either not lighted, or, if it was, that a screen or curtain had been drawn over the light, in order to prevent its confusing engineers of trains which passed that station without stopping. At the close of plaintiff's evidence a nonsuit was ordered by the trial court, and thereafter the exceptions were directed to be heard by this court in the first instance.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

S. E. Filkins, for plaintiff.
Charles A. Pooley, for defendant.

ADAMS, J. This case, like all similar cases, requires, as a requisite to a recovery by the plaintiff, that he should establish by satisfactory proofs that the injuries of which he complains were due solely to the negligence of the defendant, without the intervention of any contributing negligence of his own. The result of the trial indicates that, in the judgment of the learned trial court, the plaintiff in some essential particular failed to fulfill the obligation thus resting upon him, and it consequently becomes the duty of this court to determine whether or not the facts in the case justify the conclusion there reached. It requires little or no argument to show that, so far as the negligence of the defendant is concerned, the evidence was sufficient to raise a question of fact which could not properly have been withheld from the consideration of the jury. Indeed, we do not understand that the defendant disputes this proposition, for the arguments of counsel upon either side of the case have been addressed exclusively to the discussion of the question of whether or not the plaintiff was guilty of some omission of duty which he owed himself while attempting to cross the defendant's tracks in the manner described by him. We pass, therefore, to the consideration of this single controlling question, and in doing so shall advert to some facts, supplemental to those already stated, which are clearly established by the evidence in the case, and which bear directly upon the issue thus presented.

In the first place, it appears that the plaintiff, at the time of the accident, was, and for several years prior thereto had been, in the defendant's employ as a track repairer; and it is conceded that he

not only was aware of the manner in which the trains were run upon the defendant's road, but that he was familiar with this particular crossing, with the uses to which the several tracks were put, and with the dangers which were to be apprehended by one while attempting to cross the same when they, or any of them, were being used for the storage of empty cars. The plaintiff himself testifies, and in this respect he is corroborated by all of his witnesses who gave evidence upon the subject, that at the time of the accident West street was so illuminated, by the light of the moon and the electric lights at the depot, as to be "almost as light as day." He further testifies that there was nothing to obstruct his view of this locomotive approaching from the west, save the cars which were standing upon the several tracks west of the street, and he says that, even with these cars standing there, he could, from the point where he stopped, near the flagman's shanty, obtain a clear view up the main branch towards the west for a distance of about 99 feet, and he adds that, "every step I took north, I could see still farther up the main branch"; and that, when he got into the space between the main branch and No. 1, he could see beyond Gwinn street, or, to quote his exact language:

"I could see pretty near all the way up the main branch track. I could see pretty near a mile. * * * Before I got to the main branch track by coming within this space, within three or four feet of the main branch track, I could stand there, and look up the track a mile to the west, by bending that way."

Notwithstanding this evidence upon the part of the plaintiff, he insists that, just before reaching the main branch, he looked towards the west, and did not see or hear anything of the locomotive which struck him, and that the first intimation he had of its proximity was as he stepped upon the track, when something hit him, which was the last consciousness he had of his condition, until he found himself lying upon the ground.

That the plaintiff correctly described the situation confronting him, and the opportunity which it afforded him to see the locomotive approaching upon the main branch from the west, is not to be doubted; for, in addition to his own evidence upon the subject, his other witnesses all testified to substantially the same effect. We are, therefore, called upon to determine whether, in the circumstances which have been detailed, it can be fairly said that a question of fact was presented, and whether, if such question had been submitted to the jury, their verdict in favor of the plaintiff could be sustained. This court recently had occasion to hold, in a case which, in some of its circumstances, was not unlike the present one, that where it appeared, without contradiction, that a person, in attempting to cross a railroad track, looked in each direction before stepping onto the track upon which the accident happened, the question of contributory negligence was one of fact, and not of law, although the statement of the party might itself seem to be highly improbable. Seeley v. Railroad Co., 8 App. Div. 402, 40 N. Y. Supp. 866. We regarded that case as one standing upon the border line, and we are persuaded that the doctrine there enunciated was carried to its extreme limit. In support of the conclu-

sion which was there reached, we cited the cases now relied upon by the plaintiff, and more especially that of Greany v. Railroad Co., 101 N. Y. 419, 5 N. E. 425, in which the learned judge who wrote the opinion thus stated the law of the case:

"The plaintiff is not bound to see. He is bound to make all reasonable efforts to see that a careful, prudent man would make in like circumstances. He is not to provide against any certain result. He is to make an effort for a result that will give safety,—such effort as caution and prudence will dictate. I know of no exception to the doctrine that where there is any evidence, direct or inferential, of care or caution on the part of the person injured, the question whether it was in compliance with that rule is for the jury."

In view of some of the more recent decisions of the court of last resort in this state, we feel justified in saying that, while the principle upon which this rule is made to rest has received frequent recognition, the rule itself has not been adhered to with the same degree of rigidity as characterizes its statement in the foregoing quotation. But, even accepting it, without modification or variation, as the rule which must govern the present action, we think the undisputed facts of the case were such as to warrant the trial court in reaching the conclusion that by no possibility could the plaintiff, in the conditions which surrounded him, have made all the reasonable efforts to see which a careful, prudent man should have made in like circumstances.

We have stated that, in some respects, this case resembles the Seeley Case, supra; but in our opinion its similarity fails in at least two particulars, which are, of themselves, sufficient to distinguish it from that case, and to remove it from the operation of the rule which was there applied,—the first of which is that while, in the Seeley Case, it appeared that the night was an extremely dark one, in this case it is conceded to have been almost as light as day. Again, in the former case there was no direct proof tending to contradict the evidence of the plaintiff's main witness that the decedent looked in both directions just before stepping upon the track, but in the present one the proof upon that subject is materially different. The plaintiff's witness, O'Brien, who, as has already been stated, was following the plaintiff in company with Miss Kerr, testifies that he was some 10 or 12 feet distant from the plaintiff, and that he saw this locomotive as it came from the west; that he first discovered it when it was some 60 feet west of the west line of the street, which would make it in the neighborhood of 126 feet west of the point of collision; that, when he first saw it, the plaintiff had not reached the main branch track; that, immediately upon its coming into view, he called out to the plaintiff, "Look out, Burns, or you will get killed!" but that the plaintiff, instead of heeding the admonition thus given, stepped upon the track, and was struck. O'Brien's companion, Miss Kerr, in attempting to detail the circumstances surrounding the accident, was obviously laboring under some embarrassment, and her statement was, in consequence, not altogether satisfactory; but she, nevertheless, corroborates O'Brien to the extent of saying that she saw the approaching locomotive at the time he called out to the plaintiff.

With these significant facts thus clearly established, the conclusion is irresistible that, if the plaintiff had looked to the west just before stepping upon the main branch track, he must, of necessity, have seen the approach of this locomotive in ample time to have avoided coming into collision with it; for, as he tells us, every step he took going north from the flagman's shanty extended the range of his view in the direction from which it was approaching. That he did not see the locomotive cannot be satisfactorily explained upon any other hypothesis than that he did not make a reasonable effort to see it; and this explanation finds support in his own testimony, which was to the effect that, just before reaching the main branch track, he was looking at the lights in the depot upon the east side, and that, as he was struck, he was looking straight ahead, with his eyes upon the ground. The case, in our opinion, comes quite closely within the principle laid down in Cordell v. Railroad Co., 75 N. Y. 330; Daniels v. Railroad Co., 125 N. Y. 407, 26 N. E. 466; Collins v. Railroad Co., 92 Hun, 563, 36 N. Y. Supp. 942, and other like cases.

We therefore conclude that the plaintiff's exceptions should be overruled, and that judgment upon the nonsuit should be ordered in favor of the defendant, with costs. Judgment ordered accordingly.

HARDIN, P. J., and FOLLETT and GREEN, JJ., concur.

WARD, J. (dissenting). The negligence of the defendant was gross. I think the question of contributory negligence was for the jury. There should be a new trial.