(41 App. Div. 89.)

LEWIN v. LEHIGH VAL. R. CO.

(Supreme Court, Appellate Division, Fourth Department.  May 24, 1899.)

1. RAILROADS—ACCIDENT AT CROSSING.

Where the evidence as to the rate of speed at which defendant's train approached a crossing, and as to whether the bell was rung, is conflicting, the question of defendant's negligence should be left to the jury.

2. SAME—QUESTION FOR JURY.

The wagon in which plaintiff was riding approached a railroad crossing from the southwest, and was struck by an east-bound train.  The highway crossed the track at an angle of about 25 deg., and up to a point 50 feet from the track the vision towards the west was obscured.  Plaintiff was seated on a couch in the back of the wagon, facing the east, and holding a baby in her lap.  She testified that when about 300 feet from the track she warned her husband, who was driving, to look out for the cars; that two or three times while going the last 50 feet she looked to the west as well as she could from her position.  *Held*, that the question of plaintiff's negligence should have been left to the jury.

3. IMPUTED NEGLIGENCE.

Negligence of a husband in driving upon a railroad crossing cannot be imputed to the wife, who was riding in the wagon with him.

Action by Augusta Lewin against the Lehigh Valley Railroad Company.  Verdict was directed for defendant, and plaintiff moves for a new trial upon a case containing exceptions ordered to be heard at the appellate division in the first instance.  Motion granted.

The action was commenced on the 16th day of April, 1898, to recover damages which the plaintiff claims to have sustained by reason of the alleged negligence of the defendant, by which the train of the defendant came in collision with the wagon in which the plaintiff was riding, at a point where the highway crosses defendant's railroad in the town of Farmington, Ontario county, N. Y.  At the place in question the defendant owns and operates a double-track railroad, which extends substantially east and west.  The highway upon which the plaintiff was crosses defendant's tracks at grade from southwest to northeast, at an angle of between 24 and 25 deg.  On the 9th day of January, 1898, the plaintiff, with her husband, and a young man, a relative of hers, and her two children, aged 3½ years and 18 months, respectively, approached the crossing from the southwest in a lumber wagon drawn by one horse.  Her husband, the young man, and the oldest child were sitting in a spring seat on the forward part of the wagon, and the plaintiff's husband was driving.  The plaintiff was sitting on a couch in the back part of the wagon, which was about over the hind axle, holding her youngest child in her lap; was facing the east, her back being towards the west.  When the wagon in which the plaintiff was riding reached the crossing, it was struck by an engine on defendant's railroad, coming from the west.  The wagon was demolished, and the plaintiff was thrown out, and received the injuries of which she complains.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, and SPRING, JJ.

Thomas Raines, for plaintiff.

George F. Yeoman, for defendant.

McLENNAN, J.  The evidence is conflicting as to whether the bell was rung or whistle sounded upon the defendant's engine as it approached the crossing.  The speed at which the train was going is also in dispute,—the evidence of the plaintiff tending to show that it was going at the rate of from 50 to 60 miles an hour; and that of the

witnesses called by the defendant, that it was going at a much less rate of speed. Upon the evidence, it was clearly a question for the jury to determine whether the defendant was guilty of negligence which caused the injury or not.

The only other question involved upon this appeal is whether the plaintiff was guilty of negligence which contributed to the accident which resulted in the injuries sustained by her. The evidence is uncontradicted that in approaching the crossing where the accident occurred, from the southwest, there is a hill or knoll in the highway, several hundred feet from the crossing, at which point the crossing can be seen. The plaintiff testified that when they reached that point she said to her husband, who was driving: "We have to cross the railroad track. Look out for the cars;" that she was looking and listening at that point, and did not hear or see the train approaching, and that the horse proceeded towards the crossing upon a slow walk, under perfect control; that the horse was gentle, and 18 years old. After leaving this high ground in the highway, the evidence tends to show that there is an orchard in the angle between the highway and defendant's tracks, and also a snow fence, which tends to obstruct the view of an approaching train from the west as one proceeds along the highway,—at least, until the traveler reaches a point 50 or 75 feet from the crossing, measured along the highway. The plaintiff testifies positively that in going that distance she looked two or three times to the west, and did not see the train approaching, and did not see the train until the horse was walking upon the track. Assuming that the horse was going at the rate of 4 miles an hour, and the train was going at the rate of 50 miles an hour, when the plaintiff was 50 feet from the crossing the train was more than 600 feet away; and if the horse was going at a less rate of speed, and the train at a greater rate of speed, which might be found upon the evidence, the train was still further away from the crossing when the plaintiff was at the point where it is claimed her view of the railroad was unobstructed. The situation was such—the angle made by the railroad and the highway—that it is quite evident that the only way the plaintiff could have seen the approaching train was by turning almost squarely around and looking directly behind her. When she looked to the west, by turning partly around, she simply was enabled to see across the point of the angle, and could not, in that position, see the train. We think that the plaintiff, considering the way she was seated in the wagon; the fact that she was holding a young child in her lap; the fact that she had warned her husband, who was a competent driver, that they were approaching the railroad crossing; and the fact that she looked toward the west, as appears by her evidence, upon several occasions, while going the 50 or 75 feet after passing the point where the view was obstructed by the orchard and snow fence,—could not be said, as a matter of law, to have been guilty of negligence in not turning her body clear around, in such a way as to enable her to see the railroad track of the defendant for a distance of 600 or 700 feet west of the crossing. The negligence of the husband (assuming that he was negligent) cannot be imputed to the plaintiff. Hoag v. Railroad Co., 111 N. Y. 199, 18 N. E. 648;

Hennessy v. Railroad Co., 73 Hun, 569, 26 N. Y. Supp. 321. In the case last cited it was said: "As to the wife, a mere passenger with him in the wagon, she is responsible only for her own neglect, and her right of recovery for injuries cannot be defeated by the negligence of the driver." This case was affirmed by the court of appeals. 147 N. Y. 721, 42 N. E. 723. In the case of Weldon v. Railroad Co., 3 App. Div. 370, 38 N. Y. Supp. 206, it was held that as it appeared that the plaintiff was taking a gratuitous ride, having no control of the vehicle or the driver, any negligence of Patrick Weldon, the driver, could not be attributed to her. See, also, Zimmermann v. Railway Co., 28 App. Div. 445, 51 N. Y. Supp. 1; Bergold v. Railroad Co., 30 App. Div. 438, 52 N. Y. Supp. 11. Upon all the evidence and circumstances of this case, we think it clearly was for the jury to determine whether the plaintiff was guilty of negligence which contributed to the injury. Greany v. Railroad Co., 101 N. Y. 419, 5 N. E. 425; Massoth v. Canal Co., 64 N. Y. 524; Seeley v. Railroad Co., 8 App. Div. 402, 40 N. Y. Supp. 866. Our conclusion therefore is that the plaintiff's exceptions should be sustained, and the motion for a new trial granted, with costs to the plaintiff to abide the event.

Plaintiff's exceptions sustained, and the motion for a new trial granted, with costs to the plaintiff to abide the event. All concur.