the plaintiff, and it is a cloud upon the title to said premises." This pleading was held good. It conforms strictly to the rule laid down in section 1542 of the Code. In discussing the question, Judge Finch says, at page 374, 126 N. Y., and page 556, 27 N. E.:

"In carrying out that rule it sometimes happens that a plaintiff knows the fact that a third person claims an interest in the subject-matter of the action, but does not know the nature, extent, or merits of the claim, which cannot, nevertheless, be entirely ignored without peril to the completeness of the remedy sought. In such an emergency the facts may be stated, the claimant may be called in as a party, and required to disclose his alleged interest."

Sections 1557 and 1577 of the Code of Civil Procedure make the final judgment in an action of partition "binding and conclusive" upon each person served with a summons; and, in view of that fact, the plaintiff should be required to state, to the extent of his knowledge, all the facts which make up the claims of adverse defendants.

The interlocutory judgment is reversed, with costs and disbursements, and the demurrer to the complaint sustained, with costs. The plaintiff has leave to amend after payment of costs. All concur.

---

(39 App. Div. 435.)

### BRANCH v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. March 22, 1899.)

1. RAILROADS—ACCIDENT AT CROSSING.

Where a train running 25 miles an hour approaches a crossing without any signals being given, and a traveler is injured, the negligence of the railroad company is established.

2. SAME—CONTRIBUTORY NEGLIGENCE.

Where the track of a railroad company was so obstructed that a train would not be in view when a traveler was within 20 feet of the crossing, he is not guilty of contributory negligence, barring recovery, where he watched for a train, and no signals were given, and he did not hear or see it until he was struck on the crossing.

Appeal from trial term, Niagara county.

Action by Calvin G. Branch against the New York Central & Hudson River Railroad Company. From a judgment of nonsuit, plaintiff appeals. Reversed.

The plaintiff was hit by one of defendant's passenger trains at the crossing in Lincoln avenue, in the city of North Tonawanda, and sustained injuries, which he makes the basis of his cause of action. Lincoln avenue, in the city of North Tonawanda, runs in a northerly direction, and is crossed by defendant's tracks at an angle of 50 deg., as they extend in a northeasterly and southwesterly direction over the street crossing. There are dwelling houses on all the lots on both sides of Lincoln avenue south of defendant's right of way. The lot on the westerly side of the street, adjacent to defendant's land, is triangular in form, and has a dwelling house and three outbuildings upon it. The street and the railroad tracks are lower than the surrounding land, as the earth has been excavated in their construction. The embankment south of the tracks on defendant's land is about 7 feet higher than the center of Lincoln avenue, at its connection with the street, and continues substantially at this elevation to Thompson street, 772 feet southwesterly from the point of intersection of Lincoln avenue with defendant's right of way. There is a wire fence on the top of this embankment, and weeds are growing upon it. At the time of the accident there was a row of willow trees on defendant's right of way, south of its tracks, and extending southwesterly to Thompson

street. There was a ditch about 6 feet deep between the embankment and defendant's tracks, and these trees started from the bottom of this ditch. The first tree was about 20 feet from the westerly line of Lincoln avenue, and inclined a trifle towards the defendant's tracks. These trees were of bushy growth, of about 20 to 25 feet in height, and grew in clumps or separate branches from the roots, and the ends of the limbs extended within 8 to 10 feet of the nearest of defendant's tracks. They were not in leaf at the time of the infliction of the injuries upon the plaintiff, but their limbs were close together. The top of the embankment extended above defendant's tracks about the same distance as above the street, so that about one-half of an ordinary passenger car would be above the top of the embankment, in passing through this cut. The view of a train of cars approaching Lincoln avenue crossing from the west was cut off from a traveler on that avenue going north, in addition to the obstructions detailed, by the dwelling houses and outbuildings, which were quite thickly placed on the west side of the street. There were open spaces between the houses, but they afforded very little opportunity to see a coming train, as the embankment, trees, outbuildings, and catering course of defendant's right of way all tended to interfere with the view. From a point about 70 to 80 feet from the track, the grade of the street descends slightly towards the center.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, and SPRING, JJ.

Henry E. Warner, for appellant.
Charles A. Pooley, for respondent.

SPRING, J. On the 3d day of May, 1897, plaintiff came in contact with an easterly bound passenger train at the Lincoln avenue crossing, and sustained injuries for which he is now seeking to recover. It was about 11:30 in the forenoon, and plaintiff was peddling milk, riding in a closed conveyance. The milk wagon was of common construction, as are used in cities, with windows on the side,—open, but small. The plaintiff had been engaged in peddling milk for seven or eight days, and passed over this crossing each day during that time. He testified, however, that he was unacquainted with the time of this train, which was a regular train, and on time. His version of the transaction is as follows:

"On that day I came down Thompson street, and turned on Lincoln avenue. I stopped to the second house, and left some milk. I got out, and then got in my wagon and started down,—down three or four houses,—and the pail was not out; and I kept on going down on a slow shack until I got near the railroad; and I stopped the horse onto a walk, and I looked for the cars, to see if I could see them coming, or the smoke, or anything. I couldn't see anything. The horse kept going along. I stopped at the top of the grade, and I couldn't see anything until I got down— The horse got down with his head about to the first rail of the track before I could see up the railroad track any at all. There was a door with a window in it on each side of the milk wagon, but both doors were open. I could see east and west as well as I can here. I looked and listened, and I couldn't hear no train or whistle or bell, or any noise. I let the horse keep on walking. I looked to the west, and I didn't see or hear anything; and I looked to the east, and I didn't see anything. The horse kept walking along, and the horse got across the track, and the fore wheels got over the north rail, and I leaned out of the east door and hit the horse; and that is the last thing I knew anything at all about it. I didn't see the train, nor hear it. I looked to the west first, to see if there were any cars backing down, or anything coming."

Later in his examination, he testified that he looked between the houses for an approaching train, but it is probable that during that

time the train was not in sight. He also said that he "kept looking all the way then, to see· if I could see anything or hear anything. I was listening and looking, and I couldn't see anything; and the horse kept walking right along." Until the plaintiff was within about 20 feet, in a direct line, from the first track, he could not see a train approaching from the west. At that distance he could see about 100 feet; and the nearer he approached the track, the more was his range of vision extended, until at the track he could see nearly half a mile in a westerly direction. The proof shows that the speed of the train was about 25 miles an hour, and that no signals were given as it approached the crossing. For·the purpose of this appeal, there- . fore, the negligence of the defendant is established.

The only question to be considered is as to plaintiff's freedom from fault. Did he exercise the prudence and caution required of him in approaching a place of known danger? The space to be traversed was about 30 feet. He was in a wagon that to some extent, at least, interfered with his hearing; and he testified that he looked both ways several times, and listened for a train, but neither saw nor heard one. That fact may be regarded as established, as his credibility was for the jury. Williams v. Railroad Co., 155 N. Y. 158, 49 N. E. 672. The short distance he had to traverse, the rapidity with which the train was moving, the shacking gate of his horse, the noise made by his wagon and by his own movements, the fact that he was shut up in his milk wagon, and that he had to lean forward to look up and down the tracks, are circumstances which render his statement sufficiently probable to permit a jury to pass upon his conduct. Petrie v. Railroad Co., 66 Hun, 282, 21 N. Y. Supp. 159; Greany v. Railroad Co., 101 N. Y. 419–427, 5 N. E. 425; Haupt v. Railroad Co., 20 Misc. Rep. 291, 45 N. Y. Supp. 666; Seeley v. Railroad Co., 8 App. Div. 402, 40 N. Y. Supp. 866. As was said in the case last cited, at page 406, 8 App. Div., and page 868, 40 N. Y. Supp.:

"But, whatever explanation may be adopted as regards the failure of the plaintiff's intestate to avail herself of the opportunity which was afforded by the conditions surrounding her to observe the approach of the train which struck her, the fact remains uncontradicted by any oral proof that the girls did look in both directions before stepping upon the track; and the rule seems now to be pretty well settled in this state that, where this is done, a question of fact is generally created, and that a recovery is not necessarily impossible because it can be shown that an approaching train might and ought to have been discovered by one who was upon the lookout for it."

Had the plaintiff looked towards the train while 20 feet back from the track, and even nearer than that, it would not have been within his view. He did not occupy more than 5 seconds, possibly, in going this distance, while the train passed over 200 feet, and it did not, therefore, come within the range of his sight until after he had passed the obstructions to his view made by the trees and embankment. His wagon was nearly over the track when it collided with the train. He must therefore have been several feet beyond the north rail, in the front end of his covered box. Just the time occupied in passing over this distance cannot be ascertained. He was watching for a train, he had milk cans aboard, and he probably les-

sened his speed as he crossed over the rails. We cannot, as matter of law, impute negligence to him. There is no specific point at which a traveler approaching a railroad crossing must look and listen. The duty is always insistent upon him to be alert and vigilant, and what constitutes the requisite caution is always dependent upon circumstances. The vigilance exacted is, in a measure, mitigated by the obvious failure of those operating the train to give the customary warning of its approach to the crossing. The care required is a relative term, and is necessarily interwoven with the question of the exercise of care and the performance of duty by the trainmen. That omission does not absolve him from care. A cautious man, approaching a railroad crossing, is watchful for the customary signals; and the fact that he does not hear them may well be said to allay involuntarily his watchfulness, and his apprehension that a train may be approaching. All these circumstances are factors to be taken into consideration in determining the question whether the plaintiff has fulfilled the burden imposed upon him, of establishing affirmatively that he exercised due care and caution in approaching this crossing. Chisholm v. State, 141 N. Y. 246, 36 N. E. 184; Hoag v. Railroad Co., 111 N. Y. 199, 18 N. E. 648; Crosby v. Railroad Co., 88 Hun, 196, 34 N. Y. Supp. 714; Lortz v. Railroad Co., 7 App. Div. 515, 40 N. Y. Supp. 253.

The counsel for the defendant relies upon Belch v. Railroad Co., 90 Hun, 477, 36 N. Y. Supp. 56, and Nash v. Railroad Co., 125 N. Y. 715, 26 N. E. 266. In the former case the plaintiff lost a wheel to his carriage while crossing the defendant's tracks. He alighted from the wagon, and was engaged for some time groping about for the wheel, in adjusting it, and in getting the rig over the tracks; and while doing so he was hit by a train and injured. The plaintiff was familiar with the crossing. He knew it was time for a regular train. The view of its approach was unobscured for over one-half a mile. In the latter case the plaintiff was passing over a private crossing leading to his own lands. He was in a place entirely known to him, and where no warning signals of an approaching train were required. The view from within 25 feet of the track was plain and distinct for half a mile in the direction of the train which collided with him. These cases are not akin to the present one.

The judgment is reversed, and a new trial ordered, with costs. All concur.