JOHN I. HUNT, as Administrator, etc., of CHESTER A. ARTHUR HUNT, Deceased, Respondent, *v.* THE FITCHBURG RAILROAD COMPANY, Appellant.

*Negligence — trains may pass over country railroad crossings at any speed — adequate signals of their approach must be given.*

Running a train over a highway crossing in the open country, at a speed, however great, is not in itself a negligent act, but the notice of its approach must be commensurate with the speed.

*Semble*, that the rate of speed may be considered in determining whether the warning was adequate.

APPEAL by the defendant, The Fitchburg Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Rensselaer on the 21st day of May, 1897, upon the verdict of a jury, with notice of an intention to bring up for review upon such appeal an order bearing date the 19th day of May, 1897, and entered in said clerk's office, denying the defendant's motion for a new trial made upon the minutes.

The plaintiff's intestate, a lad of about ten years of age, who was riding with another person and at his invitation, was killed at a highway crossing by a train on defendant's road. This action is brought to recover damages for such killing, upon the theory that it was the result of defendant's negligence. The jury found a ver-

dict for the plaintiff of $3,500, and from the judgment entered thereon, and from an order denying a new trial, this appeal is taken.

*T. F. Hamilton,* for the appellant.

*James Lansing,* for the respondent.

PARKER, P. J.:

The negligence charged against the defendant in this action is an omission to give proper signals or warning of the coming train as it approached the crossing, and also that the train was run over such crossing at an improper and dangerous speed.

With reference to the question whether speed over a highway crossing can be so great as to be deemed in itself a negligent act on the part of the railroad company, a distinction seems to have been made between such crossings in a city or village, and those in the open country. It is plain that the rules applicable to crossings in cities and villages should not be applied to the crossing in question. It was an ordinary highway crossing in the open country, and the rule applicable to such we may now assume is well stated in *Martin* v. *N. Y. C. & H. R. R. R. Co.* (27 Hun, 532; affd., 97 N. Y. 628). Under that rule, the speed at which the train crosses the highway may be considered in determining whether due warning of its approach has been given. The speed of the train, be it ever so great, is not in itself a negligent act, but when great speed is reached, the notice of its approach must be commensurate with it. The warning must be adequate to the increased speed. If the warning given is *timely* and reasonable, the company is not negligent, no matter how rapidly the train may be run. Such also seems to be the rule held in *Warner* v. *N. Y. Central R. R. Co.* (44 N. Y. 465), and I do not discover that it has been materially changed, as applied to country crossings.

In the case before us the court had charged the jury as follows: "It is also charged here that the train was running at a high and dangerous rate of speed at that crossing, at a rate of speed which was negligence upon the part of the defendant.

"I charge you, as matter of law, that the defendant in the operation of its trains upon that road in the open country was not bound

to run at any rate of speed. It could operate its trains at a rate of speed as pleased it, but in approaching a crossing it was bound to exercise proper care, reasonable care, and that reasonable care which it must exercise in approaching a crossing depends, so far as its speed is concerned, upon all the surroundings, the nature and circumstances, and condition of the crossing, and whether or not it is a highway upon which there is little travel, or upon which there is a great deal of travel; whether or not the view is obstructed of an approaching train, or whether it can be clearly seen. Various facts and circumstances may exist, and do exist, upon which that question of the negligence of the defendant in the operation of its trains rests. So that it is a question for you as to what rate of speed that train was running. * * * What does the evidence satisfy you with regard to the rate of speed of that train upon that occasion, when approaching this crossing, and in view of all the circumstances surrounding that crossing, in view of its condition as you find it from the evidence to be; was the train upon this occasion running at a dangerous rate of speed, so that you can say as a question of fact it was negligence?" The defendant's counsel then asked the court to charge that, "if the jury find that the defendant *did* give a proper signal, either by ringing a bell or blowing a whistle on approaching this crossing, sufficient to warn travelers on the highway, that they cannot find a verdict against this defendant, predicated *solely* on the speed at which this train was going, passing this crossing." The court replied: "I decline to charge in that respect any differently from what I have already charged."

It is manifest that this charge does not adopt the rule above stated. Although it told the jury that the defendant was at liberty to operate its trains at any rate of speed it pleased, yet it at the same time instructed them that it must approach the crossing with reasonable care, and that so far as speed is concerned, reasonable care would depend very largely upon the condition of the crossing and the circumstances surrounding it. It does not call their attention at all to the fact that if the signals of approach are timely and adequate to the rate of speed used, then the very highest rate of speed would be consistent with reasonable care. And when that point was made, by the request of defendant's counsel, the refusal of the court to charge it very clearly gave the jury to understand that even though they

should conclude that *proper* signals by bell or whistle were in fact given, sufficient to warn the deceased, nevertheless, they were at liberty to base a verdict against defendant solely upon the excessive speed at which the train was running.

This rule, so given to the jury, was, therefore, an erroneous one; and, inasmuch as upon the evidence it is by no means clear that ample signals by bell and whistle were not given, it is an error prejudicial to the defendant and for which a new trial must be granted.

The highest rate of speed which the plaintiff's evidence tended to establish was fifty miles an hour, and it may be claimed that it was left to the jury to say whether signals by bell and whistle, such as defendant claimed were given, were sufficient at that crossing at that high rate of speed. But the charge does not present that question to the jury. On the contrary, it in effect tells them that if " proper signals" by bell or whistle were given "sufficient to warn travelers on the highway" yet they might predicate a verdict against defendant solely on the speed of the train.

Moreover, there was nothing unusual about this crossing calculated to prevent a whistle blown at a distance of 1,300 feet away, or a bell rung as the train approached the crossing, from being heard. A person stopping to look, at a reasonable distance from the track, had a clear view of it for many hundred feet. In short, it was such a crossing as a train on most roads must necessarily pass once at least, and frequently oftener, every two or three miles of its progress. I am not prepared to hold that signals by bell and whistle, if well and faithfully given, would not be adequate at such a crossing, to a speed of fifty miles an hour ; and I am not willing to sustain a verdict based upon such a proposition. One of the main purposes of a railroad is to furnish rapid transit to the traveling public, and the demands of the public in that respect could by no means be met by the companies if they were obliged to slacken their speed at every such crossing their trains pass over. Nor does experience show that it is necessary for the safety of the public that they should do so, even though no warning is given other than that by bell and whistle. Very many trains now running in this State would not make their schedule time unless they run through the open country and over similar crossings at a higher speed even than fifty miles an

hour, and yet I am not aware of any complaint that the signal by bell and whistle, on ordinary crossings, cannot be made an adequate warning for such trains. At least there is no evidence in this case to show that it would not have been sufficient in this instance.

These considerations lead to the conclusion that the judgment and order must be reversed.

All concurred.

Judgment and order reversed, and a new trial granted, costs to abide the event.