(25 App. Div. 630.)

LIGHTHOUSE v. THIRD NAT. BANK OF BUFFALO et al.

(Supreme Court, Appellate Division, Fourth Department.   February 6, 1898.)

1. CONTRACTS OF SALE—RIGHTS IN SPECIFIC PROPERTY BEFORE DELIVERY.
    A mere purchase of a certain lot of bark to fill an order given to the purchaser does not give the person ordering the bark any legal or equitable right thereto, though he may have paid the price when giving the order.

2. SAME—RIGHTS IN EQUITY.
    Plaintiff gave his promissory notes, in part payment for 1,000 cords of bark, to a company which bought such amount of another company. The former company discounted the notes, and paid a bill against the latter' company, which they assumed, for peeling such bark. The sale between the companies stated that the bark was to be delivered to plaintiff, and the proceeds, over the amount payable for peeling, were to be accounted for to the latter company as per sale to plaintiff. Afterwards defendant bank became the transferee of the bark, instead of plaintiff. *Held*, that plaintiff can enforce the agreement in equity as against all the parties to it, including the bank, at least to the extent of the amount of the proceeds of the notes actually paid for peeling.

Appeal from special term, Monroe county.

Action by John C. Lighthouse against the Third National Bank of Buffalo and others. From a judgment for plaintiff, defendants appeal. Affirmed.

The following is the opinion of the court below (NASH, J.):

"I am unable to assent to the contention that the plaintiff is entitled to have the defendant banks account to him for one thousand cords of the bark on the Boody lands, or for that quantity of bark, or for so much thereof as will repay him the three thousand dollars advanced by him on the purchase price thereof. The agreement between the plaintiff and the Morrison Run Lumber Company was for the sale to him of one thousand cords of bark generally as an article of merchandise. Indeed, the Morrison Run Lumber Company had not, at the time of the oral negotiations and the delivery by the plaintiff of his promissory notes to Droney, purchased of the United Lumber Company the one thousand cords of bark on the Boody lands peeled by McRae. Before the execution and delivery of their contract with the plaintiff, the Morrison Run Lumber Company made the purchase of the United Lumber Company, which provided the Morrison Run Lumber Company with the means of fulfilling its contract with the plaintiff. But that did not give the plaintiff any specific right, legal or equitable, to the one thousand cords of bark as against the United Lumber Company, or as against the banks to which the bark was subsequently transferred by French and Adelpha C. Briggs, who had acquired or succeeded to the rights of the United Lumber Company. The proposed compromise, by which the plaintiff was to take 500 cords of the bark delivered in Rochester in satisfaction of his claim, if made to the banks by French, was not assented to by the banks. The plaintiff offered to take that quantity if delivered at once. But there is no evidence that the banks assented to the arrangement, if proposed by French. The equity of the plaintiff, if any, against the United Lumber Company or its transferees, the defendant banks, must, I think, be found in the money obtained by the Morrison Run Lumber Company upon the discount of the plaintiff's promissory notes given as an advance payment upon his agreement to purchase the 1,000 cords of bark, and paid to McRae, under and in part performance of the contract between it and the United Lumber Company, by which the Morrison Run Lumber Company assumed the bills due McRae for peeling and loading the bark, designated in the contract as '1,000 cords of bark of this year's peeling on the job of Duncan McRae,' being bark on the Boody lands. The contract between the United Lumber Company and the Morrison Run Lumber Company could have been specifically enforced by the

latter as against the former, and upon the payment of the remainder of the $3.25 per cord for peeling and loading to McRae, and accounting to J. C. French, as in the contract provided, for the remainder of the proceeds of the bark at the rate of $7.50 per cord, delivered f. o. b. cars, Rochester, N. Y., as per sale to J. C. Lighthouse, the Morrison Run Lumber Company would have been entitled to the 1,000 cords of bark. And as the memorandum of sale states that the bark was to be delivered to the plaintiff, and the proceeds over and above the amount payable to McRae accounted for to French as per sale to Lighthouse, the sale was made to enable the Morrison Run Lumber Company to carry out its agreement with the plaintiff; and, having been made for that specific purpose, it was an agreement which it seems to me that, in equity, the plaintiff could have enforced as against all of the parties to it, at least to the extent of the amount of the proceeds of the plaintiff's promissory notes actually paid to McRae to apply upon his bills for peeling the bark. Adelpha C. Briggs, as owner of the property and rights of, and who in fact was, the United Lumber Company, was as such a party to the agreement; and the banks, which became transferees of the bark, simply as creditors of French, Adelpha C. Briggs, and the United Lumber Company, took subject to the rights of the plaintiff. To the extent, therefore, of the amount paid to McRae for peeling the bark, I am of the opinion that the plaintiff is entitled to relief as against the defendant banks. It will be so ordered."

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Lewis & Lewis, for appellants Third National Bank of Buffalo and Farmers' & Mechanics' Bank of Buffalo.

Hubbell & McGuire, for respondent.

PER CURIAM. Judgment affirmed, with costs, on opinion of NASH, J., delivered at special term.

---

(24 Misc. Rep. 334.)

PHILLIPS v. PHILLIPS.

(Supreme Court, Special Term, New York County. June 15, 1898.)

1. DIVORCE—ADULTERY—EVIDENCE—SUFFICIENCY.

The evidence in an action for divorce showed that plaintiff's brother was invited by defendant to go with him to his rooms at an hotel, and, on entering, defendant said, "I find I have a visitor." The brother then saw a woman in defendant's bed, apparently undressed; and defendant said she was a woman he was keeping, giving her so much a month. The brother then left, and once afterwards saw this woman with defendant at a theater. The testimony was taken before a referee, and there was no defense, and an agreement for alimony was made. Held, that the evidence was not inconsistent with innocence of adultery, and was therefore insufficient.

2. SAME—REFERENCE—RECOMMITMENT.

Code Civ. Proc. § 1229, provides that judgment cannot be taken as of course on a referee's report in a divorce suit, but must be rendered by the court after the referee has reported. Held, that the court at special term, on a motion for judgment on a referee's report in a divorce case, cannot, at least without the consent of the parties, and for cause shown, refer the report back to the same referee to enable plaintiff to introduce further evidence to satisfactorily prove her case, where the evidence introduced was not sufficient.

3. SAME—SETTING ASIDE REPORT.

Nor can the court set aside the referee's report, and send the case to another referee, or to the trial term, to be proceeded with de novo.