ELLIS R. WILLIAMS, Appellant, *v.* THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, Respondent.

1. CREDIBILITY OF WITNESS. It is the rule and policy of the law to allow all testimony to go to, and be weighed by, the jury; and the question of the credibility of the witness is, in all cases, one for the jury.

2. CHANGE IN TESTIMONY ON NEW TRIAL. Where the plaintiff's testimony on a new trial differs from that given by him on the first trial, and if credited by the jury would entitle him to a verdict, the trial court has no right to treat it as untrue as matter of law and take the case from the jury, but should leave it to the jury to say whether the testimony is entitled to belief.

*Williams* v. *Delaware, L. & W. R. R. Co.*, 92 Hun, 219, reversed.

(Argued January 26, 1898 ; decided March 1, 1898.)

Appeal from a judgment of the late General Term of the Supreme Court in the fourth judicial department, entered January 8, 1896, affirming a judgment of nonsuit entered upon an order made by the trial court at Circuit.

This action was brought to recover damages for a personal injury sustained by a freight brakeman in the employment of the defendant.

The facts, so far as material, are stated in the opinion.

*Walter T. Dunmore* for appellant.   The court erred in not submitting to the jury the question whether plaintiff knew that the bridge was low, and, therefore, assumed that hazard in continuing in defendant's employment.   (116 N. Y. 628; *Wallace* v. *C. V. R. R. Co.*, 138 N. Y. 302; *Powers* v. *N. Y., L. E. & W. R. R. Co.*, 98 N. Y. 280.)   The fact that plaintiff did not testify upon the last trial the same as the case as settled made him appear to have testified upon the former trial, did not justify the trial court or the General Term in determining the facts as matter of law against him, and take the question thus presented from the jury.   (*Hunter* v. *N. Y., O. & W. R. R. Co.*, 116 N. Y. 615; 130 N. Y. 669; *Salter* v. *U. & B. R. R. R. Co.*, 75 N. Y. 273; 88 N. Y. 42.)   On a motion for nonsuit plaintiff is entitled to have the evidence construed in a manner most favorable to his position.   (*Harris* v. *Perry*, 89 N. Y. 308; *Sherry* v. *N. Y. C. & H. R. R. R. Co.*, 104 N. Y. 652; *Stackus* v. *N. Y. C. & H. R. R. R. R. Co.*, 79 N. Y. 464; *Beisiegel* v. *N. Y. C. R. R. Co.*, 34 N. Y. 624; *Salter* v. *U. & B. R. R. R. Co.*, 88 N. Y. 42; *Smedis* v. *B. & R. B. R. R. Co.*, 88 N. Y. 13; *Richardson* v. *N. Y. C. R. R. Co.*, 45 N. Y. 846; *Hart* v. *H. R. Bridge Co.*, 80 N. Y. 622; *Greany* v. *L. I. R. R. Co.*, 101 N. Y. 419; *Payne* v. *T. & B. R. R. Co.*, 83 N. Y. 572.)

*William Kernan* for respondent.   The motion for a nonsuit was properly granted.   (*Williams* v. *D., L. & W. R. R. Co.*, 116 N. Y. 628; *Hunter* v. *C. & S. V. R. R. Co.*, 126 N. Y. 18; *Gibson* v. *Erie R. Co.*, 63 N. Y. 449; *Owen* v. *N. Y. C. R. R. Co.*, 1 Lans. 108; *Evans* v. *L. S. & M. S. R. Co.*, 12

Hun, 289; *Haas* v. *B.*, *N. Y. & P. R. R. Co.*, 40 Hun, 145; *De Forest* v. *Jewett*, 88 N. Y. 264; *Clark* v. *S. P.*, *etc.*, *R. R. Co.*, 2 Am. & Eng. R. R. Cas. 240; *Appel* v. *B.*, *N. Y. & P. R. Co.*, 111 N. Y. 550.)

Parker, Ch. J. On a former appeal this court, by its Second Division, held that this plaintiff should have been nonsuited because it appeared that he knew, or at least should have known, that the bridge under which the train was passing was not high enough to permit him to pass under it while standing erect upon the top of a box car, the principle applied being that "a servant who enters upon employment from its nature hazardous, assumes the usual risks and perils of the service, and of the open, visible structures known to him, or of which he must have known had he exercised ordinary care and observation." (See *Williams* v. *D., L. & W. R. R. Co.*, 116 N. Y. 628–634.)

It then appeared that while standing on top of a car he was struck by a bridge over the track and was injured. He had run upon this train for over three weeks, and during this time had passed daily under this bridge and frequently on top of a box car, where he was required to be in the performance of his duty. The accident occurred in the day time; the bridge was in plain sight, and, knowing the train was about to pass under it, he turned his back to it, and was going towards the rear of the car when he was struck.

While the case was on the border line it seems to have been well decided.

But in the record now before us the testimony of the plaintiff is very different. So different that had it appeared in the first record the result of the former appeal must have been an affirmance of the judgment instead of a reversal. Applying on this review the usual rule which obtains in the case of a nonsuit, that a plaintiff is entitled to have treated as true the testimony most favorable to him, it becomes simply an impossibility to affirm the judgment. Every principle of law applicable to such a situation commands its reversal.

The plaintiff testified on this trial that prior to the accident he never passed under the Norwich bridge on top of a box car, and that he did not know it was a low bridge.   Surely it cannot be argued in the face of such evidence that the plaintiff knew or ought to have known that it was a low bridge.

This suggests the query, why then did the trial court grant the nonsuit, and how came the General Term to affirm it? An extract from the brief of the learned counsel for the respondent will perhaps best present the answer and I quote it.

" The learned judge who presided on the second trial presided on the last trial and granted the nonsuit.   He saw and heard the testimony of the plaintiff on both trials, and did not believe that the change of his testimony was honest or worthy of belief.   The General Term evidently was of the same opinion, for, after a careful examination of the evidence before the Court of Appeals and that given on the last trial, while admitting that the evidence of the plaintiff was somewhat different on the last trial, declined to disturb the decision of the trial court, especially in view of the apparent disingenuousness of the plaintiff in giving his testimony upon the last trial, and his obvious effort to so change his evidence as to avoid the former decision in this case."

In other words, the court, believing that the plaintiff had changed his testimony falsely, with a view of avoiding the effect of the decision of this court, concluded to disregard his testimony on this trial, and held that what he testified to on the former trial was true.

There can be no doubt but the learned courts below, both at Trial and General Term, were actuated in their course by most praiseworthy motives, fully believing that they were promoting good morals, honesty and justice, but the question is, was their holding in accordance with law?   On one of the trials it is quite likely that the plaintiff's testimony was truthfully given, but whether on the first or the second trial was for the jury, not the court, to determine.

It is the province of the former, not the latter, to weigh the

21

testimony given in the light of all the circumstances surrounding it.

How testimony should be treated which is affected by contradictions and inconsistencies, or by evidence making its falsity manifest and establishing a consciousness in the witness of its falsity, was carefully considered by Gray, J., in *People* v. *Chapleau* (121 N. Y. 266), and the conclusion reached that, prior to the enactment of sec. 714 of the the Penal Code and sec. 832 of the Code of Civil Procedure, it was the general rule that the question of the credibility of a witness was one for the jury, the only exception being where the discrepancies in the testimony were the result of deliberate falsehood; but since their enactment it is "the rule and policy of the law to allow all testimony to go to, and be weighed by, the jury."

The case of *Hunter* v. *N. Y., O. & W. R. R. Co.* (116 N. Y. 615 and 130 N. Y. 669) presented precisely the same question as here.

Hunter was injured by being struck by the roof of a tunnel while passing through it on top of a box car. Upon the first trial he testified that the last he remembered he was sitting upon the top of a box car. The undisputed evidence showed that it was impossible for the roof to have struck his head while sitting on top of the car, and, therefore, the conclusion was reached that the injuries could not have been caused by the negligence complained of, and the judgment was reversed.

On the second trial Hunter testified that he was not sitting down, but was standing on top of the box car when he ceased to remember. The plaintiff recovered, and the judgment was finally affirmed in this court, and necessarily so, because the court could not hold, as matter of law, that he was not entitled to have his testimony considered by the jury.

In this case the plaintiff gave testimony which, if credited by the jury, would have entitled him to a verdict. The trial judge apparently did not credit it, and it is quite likely that his view of the testimony was the correct one, but the diffi-

culty with the situation is that, under our method of procedure, it was the province of the jury, not the court, to say whether his testimony was entitled to belief.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur, except Gray, J., absent, and Martin, J., not sitting.

Judgment reversed.