## DOYLE v. ALBANY RY.

(Supreme Court, Appellate Division, Third Department. July 6, 1898.)

1. TRIAL—NONSUIT—CREDIBILITY OF EVIDENCE.
    Where a judgment for injuries alleged to have been caused by defend-
    ant's negligence was set aside on appeal on the ground that plaintiff's
    own evidence showed that he ought not to recover, and on the retrial his
    evidence met the defects developed by the appeal, a refusal to nonsuit
    on the ground that plaintiff purposely varied his evidence for the new trial
    was not error.

2. APPEAL—FACT ESSENTIAL TO RECOVERY—INFERENCE FROM EVIDENCE.
    Where the record shows a preponderance of evidence against plaintiff
    on a disputed fact, without proof of which he could not recover, it will
    be inferred that the jury misconceived its bearing on the right to recover,
    notwithstanding they were charged properly thereon, and the judgment
    will be reversed.

Appeal from trial term, Albany county.

Action by John Doyle against the Albany Railway for personal
injuries. From a judgment for plaintiff, and an order denying a
new trial, defendant appeals. Reversed.

Argued before PARKER, P. J., and LANDON, MERWIN, and
PUTNAM, JJ.

Rosendale & Heesberg, for appellant.
John H. Gleason, for respondent.

PARKER, P. J. When this case was before us on a former ap-
peal (39 N. Y. Supp. 440), we held that the injury evidently resulted
in part from the plaintiff's own negligence, and for that reason re-
versed a judgment in his favor. We reached that conclusion prin-
cipally upon the plaintiff's own evidence, and that of his friend
Hughes, that the "down car," which struck him, had a headlight
burning, and was itself a "glare of light." From the evidence in
that record, it was clear that, had he looked carefully for an ap-
proaching car before he entered onto the track, plaintiff could have
seen and avoided it; and the conclusion was irresistible, either that
he did not look, or else that he attempted to pass in front of a car
which he saw approaching. It was clear to us then that the trolley
pole would not have obstructed his vision, had he used reasonable
care in looking up the track, and that in fact he had an unobstructed
view of the track for several hundred feet, had he chosen to avail
himself of it. After a new trial, the case comes before us with this
very marked and significant change in the evidence affecting the
question of plaintiff's negligence: He testifies upon this trial that
he is positive that the down car had no headlight upon it, nor any
light at all; that it was a dark car. He also testifies that he stopped,
looked, and listened, and did not discover the car until just as it
struck him. Hughes, who was plaintiff's witness on the former trial,
is not sworn upon this one; and two other witnesses, who claim to
have been present, now, for the first time, testify that the down car
was apparently dark. Therefore the question upon which we re-
versed the plaintiff's recovery before is now presented to us in a
very different light. As it now appears from the evidence upon

plaintiff's side, he stepped off the up car when it stopped, passed around the rear end, and as he got where he was about to cross the south-bound track he stopped, looked up the track, and listened; that the night was dark, and he could neither see nor hear any car approaching; that he then entered upon the track, and was struck by a car going south at an unusual speed, without any light upon it, and without any signals being given, and which car, in violation of the company's rules, was running past another at a station, without coming to a stop. The trial judge, within the case of Williams v. Railroad Co., 155 N. Y. 158, 49 N. E. 672, was not authorized to take the case from the jury, however much he may have been convinced that this new version was made up to meet the defects developed by the former appeal. His refusal to nonsuit was not error. But the question remains whether, upon the whole evidence, this verdict should be allowed to stand.

If the headlight was burning on the down car as it approached the point where plaintiff was struck, manifestly it could have been seen by him for a distance of several hundred feet. He admits seeing the lights at the tollgate. And in that event the case does not substantially differ from the one before us on the former appeal. Therefore, if the clear weight of evidence is that such light was burning, the verdict upon this trial is as erroneous as was the first. The plaintiff's evidence on that question is direct and positive that it was not. The evidence of Duff and Maroney is not so positive. But, assuming that it was, their only means of knowing was the glimpse they caught of the car as it flew past the end of the up car where they were sitting. They were looking from a brilliantly lighted car, through a window, out into the night; and their opportunity of noticing the headlight, or even the lights in the car itself, was evidently not the very best. These are the only witnesses who attempt to corroborate plaintiff upon that question. The defendant swore six witnesses, who testified that the car was lighted by electricity, and the headlight burning, as it approached the plaintiff,—two of them, the motorman and conductor on the car itself, who had every means of knowing, and could not be mistaken in their testimony that all the lights were lighted. If it was a dark car, they must have known it. Also, the witness Terrell, who seems to be entirely disinterested, and a stranger to both parties, was in the car, and is positive that it was not a dark car. According to his statement, all the electric lights were burning. The conductor and motorman on the up car are both positive the lights of the down car were burning. Both were outside, and could see it in the distance as it approached; and the conductor testifies he called out to plaintiff, and warned him to look out for it. The witness Post was at the tollgate as the down car passed, and testified that its lights were burning then,—headlight and all. What its condition was when it struck the plaintiff, he does not know. Now, here are six witnesses who all testify positively that the down car was lighted, and each one of them was in a much better situation to observe and learn the fact than were the two who corroborate plaintiff's statement. True, four of them were in the employ of the defending company, but it is not yet

the law that their evidence must be rejected or discredited because of that fact. The personal interest which such a relation might possibly create is not to be overlooked in weighing their evidence, but that their statements are to be utterly discredited or disregarded because of that fact is a conclusion which jurors are much too ready to adopt, and which neither reason nor experience warrants. The weight of evidence, however, does not depend upon the number of witnesses. The reasonableness of the statement, and the opportunity to know the truth, is much more convincing. In the case before us, what reason was there for running a dark car from Troy to Albany that night, or for running it dark any part of the way? It was lighted by electricity, and no work was required to light it, except to turn it on. It is highly improbable, if not incredible, that the employés should neglect to turn on the light; and, if turned on, there was no reason why it should go out, so long as the trolley remained on the wire, and operated to propel the car. It is suggested that a fuse blew out as the motorman reversed in order to avoid striking the plaintiff, and thus put out the lights. It is possible that the light did go out when that occurred, and that may explain why, as the car passed the up car, Duff and Maroney saw no light upon it; but it would be of no force upon the question of plaintiff's negligence, for, had he stopped before going onto the down track, and looked, he would have seen the light before the motorman could have seen him, and before any reversal became necessary. Evidently, if the car had got so close that the motorman saw him and reversed, and thus extinguished the lights, the situation was such that plaintiff could have seen the car without a light, and avoided it, had he exercised reasonable care to do so. Also, Duff's statement that he jumped from his car almost as soon as the down car passed, and ran to where plaintiff was thrown, and that when he got there the car was lighted, is a strong circumstance to indicate that the car was not being run as a dark car. There is every reason to suppose that the car in question was lighted, instead of being run as a dark car. And not only do the defendant's witnesses appear to have had much the better opportunity to see, but also their statement is much the more reasonable one. It is consistent with what we would naturally expect. The plaintiff's statement is utterly inconsistent with it.

In my judgment, and notwithstanding the particularly clear charge of the trial court on that subject, there is such a clear and overwhelming preponderance of evidence against the plaintiff's claim that the down car was not lighted, that we must infer the jury misconceived the full force and bearing of that question upon the plaintiff's right to recover. It seems to me to be a case where the evidence of the plaintiff, clearly discredited by the manifest change in the claim he now makes from the one made on the first trial, is but slightly supported, and very thoroughly overcome by the evidence of defendant's witnesses upon the vital question in the case. Under such circumstances, we do not hesitate to exercise an independent judgment, and to set aside a verdict which has evidently been based

upon some theory not in harmony with the one which we have already held should be controlling in this case.

These considerations lead to a reversal of the judgment, and a discussion of the other questions presented becomes unnecessary. Judgment and order reversed, and a new trial granted; costs to abide the event.

All concur, except LANDON, J., not voting.