CHAPMAN v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. May 24, 1899.)

RAILROADS—NEGLIGENCE AND CONTRIBUTORY NEGLIGENCE FOR JURY—CROSSING TRACKS.

In an action for personal injuries, testimony for plaintiff tended to show that, in approaching a railroad crossing, he looked for trains, did not see or hear any, was unable to see the track in the direction from which

the train came by reason of some cars standing on a side track, and was struck and injured by a train going at the rate of from 40 to 60 miles an hour, that did not whistle or give any warning of its approach until near the crossing. Evidence for defendant tended to contradict plaintiff's evidence, and to show that there were no cars standing on the siding in such a way as to obstruct the view of the tracks. *Held,* that it was error to direct a verdict for defendant, as the negligence of defendant, and the contributory negligence of plaintiff, under the conflicting evidence, were questions for the jury.

McLennan, J., dissenting.

Appeal from trial term, Wayne county.

Action by Charles H. Chapman against New York Central & Hudson River Railroad Company. From an order refusing a new trial, after a directed verdict for defendant, plaintiff appealed. Reversed.

On the 23d day of May, 1898, at the Wayne trial term, the issues of fact were brought to trial. Defendant operates a railroad through the village of Palmyra, consisting of two tracks,—one, the north track, for west-bound trains; and the other, the south track, for east-bound trains. The freight house is located on the north side of the tracks east of Limerick street, which crosses the tracks in a northerly and southerly direction. North of the main track, and running from the freight house westerly, near to the said crossing, are several branch tracks, upon which, at sundry times, are stored freight cars; and it is claimed, when the cars are left standing thereon, they obstruct the view of an approaching train from the east to a person driving westerly from the freight house to reach the crossing; and, to some extent, it is claimed, the freight house also furnishes an obstruction, until persons pass the west end of the same, and pass the end of the cars standing on the branch tracks. The crossing is in the village of Palmyra, and is used by the public to a considerable extent. When the plaintiff rested, no motion for a nonsuit was made. Defendant called an engineer, who gave testimony in respect to the location of the tracks, and produced some photographs in evidence and a map made by the witness. Then the defendant moved for a nonsuit, upon the grounds (1) that the plaintiff failed to show that the injuries which he received were due to the negligence of the defendant; and (2) that the plaintiff has failed to show that he himself was free from contributory negligence. This motion was denied, and the defendant took an exception. Further evidence was given by the defendant, and thereafter some further evidence was given by the plaintiff, and at the close of all the evidence, on the motion of the defendant, upon grounds substantially as already stated, its motion for a direction of a verdict was granted, and the plaintiff excepted. Plaintiff asked to be allowed to go to the jury upon the question of the negligence of the defendant, and also upon the question of the contributory negligence of the plaintiff, and upon all the issues in the case. Plaintiff's motion was denied, and an exception was taken. Subsequently a motion for a new trial was made, as appears by the order in the case, upon all the grounds stated in section 999 of the Code of Civil Procedure, and was denied, and the plaintiff appeals from the order denying such motion.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, and SPRING, JJ.

John Gillette, for appellant.

Albert H. Harris, for respondent.

HARDIN, P. J. On the 6th day of October, 1896, plaintiff was engaged in delivering apples to a car standing near the freight house of the defendant. After having delivered the third load, he went around the freight house in an easterly direction, and started westerly, to approach the crossing, with his team and lumber

wagon, and when upon the crossing he was struck by a train coming from the east, and received serious injuries, about half past 1 o'clock in the afternoon of that day. The train, which was coming from the east, was an extra, with two cars, conveying several of the directors and employés of the road, at a high rate of speed; some of the witnesses placing the speed, as it approached the crossing, at 50 to 60 miles an hour, one witness at 60 miles an hour, and. one witness at 40 miles an hour. The defendant gave some evidence from which it might be inferred that the speed was from 35 to 40 miles an hour. The train was not to stop at the Palmyra station, as it was passing from the east to the west, carrying some of the directors of the road.

Upon the subject of the alleged negligence of the defendant, evidence was given that no whistle was sounded or bell rung prior to the engineer's discovery of the imminent danger of collision with the plaintiff. Although the defendant gave evidence tending to show the contrary, we think a fair question of fact was presented for the jury to determine whether the defendant was guilty of negligence which occasioned the accident to the plaintiff. Salter v. Railroad Co., 88 N. Y. 42; Hunt v. Railroad Co., 22 App. Div. 212, 47 N. Y. Supp. 1034; Lewis v. Railroad Co., 123 N. Y. 496, 26 N. E. 357.

The more critical and probably the question upon which the learned trial judge acted when he directed a verdict for the defendant relates to the plaintiff's conduct while approaching the crossing. The plaintiff was familiar with the crossing, and the tracks both east and west of the crossing or street were visible for over a mile east, and from 600 to 1,000 feet west of Limerick street. The passenger station is 441 feet east of Limerick street, and 29 feet south of the south rail of the south main track. The freight house is on the north side of the track, 653 feet east of the center of the crossing. To the east of Limerick street there are three side tracks. The north one is called the "Freight-House Track," and runs next to the freight-house platform. The middle one is called the "Team Track," and the south one, which is next to the north main track, is known as the "Passing Siding." None of these branch tracks crosses Limerick street. In the north main track there is a switch stand 33½ feet east of the center of Limerick street, where the branch leaves the main track; 181 feet east of the center of the crossing is the switch at which the passing siding runs out of this main branch; and at a switch, about 280 feet from the crossing, the team track and the freight-house track divide. The distance between the team track and the passing siding is 11.2 feet, and the distance between the passing siding and the north main track is 9.2 feet. From Limerick street there is a driveway to the freight house on the north side of the switch tracks. There is a milk platform 16 feet long, 6.7 feet wide, and about 5½ feet high, which stands between the driveway and the track. It is 49 feet and 7 inches from the north rail of the north main track at the crossing, following the traveled part of the highway, to a point in the driveway opposite the west end of the milk

platform. There was planking on which teams were allowed to drive over the freight-house track, 462 feet east of the center of Limerick street.

At the trial it was asserted that the plaintiff was prevented from seeing the aproach of the train by some freight cars which stood on different side tracks to the east of the crossing, and it was asserted in his behalf that his failure to learn of the approach of the train was because of the neglect of the defendant to give the proper signals of its approach. Several witnesses were called in behalf of the plaintiff, who gave evidence tending to establish that on the occasion of the accident cars were standing on the side tracks which obstructed the view of the plaintiff as he was approaching the crossing. The plaintiff testified, viz.:

"After I unloaded, I followed the driveway east from the car, perhaps 200 feet, where I drove over the north siding, where the company had fixed planks for the purpose of going over the rails. The road went around the east end of the freight house, and after I got east of the freight house, as I drove on to the north siding, I looked to the east to see if the track was clear, and it was clear about as far as I could see,—a mile and a half or more. I saw and heard nothing. I then followed the regular wagon track around the freight house, and back onto the same road I came in. I drove pretty well up to the crossing, and then I turned and looked back to the east. First I pulled my team up, and they came to a halt, and I could see nothing nor hear anything. I could not see past the end of the cars that stood on the siding. I could not see down the main track more than about 300 or 400 feet at that time. I then spoke to my horses, and they started to the crossing, and then I looked to the west, and I could see up to the bend in the road west of the freight house. I could see nothing there. By that time my horses were stepping on the track, and as they stepped on the track I heard a shrill whistle that seemed to be right against me. I would not like to say positively, but if I remember rightly my horses had stepped over the north rail of the track. I raised up in my wagon, and attempted to draw my horses off to the right, and that is the last I saw."

This witness was cross-examined to a considerable extent, and in some respects his testimony was varied from that which we have already quoted.

The plaintiff was recalled, near the close of the case, and he testified:

"I did not see the train at any time, and did not hear a sound from it. At the instant I was struck, there was a very loud whistle, that appeared to be right at my side. In the way of listening, I stopped at the east end of the freight house, and looked and listened to see if there was any train coming. At the milk stand I brought my team to a halt, and looked to the east, and could see or hear nothing. I looked to see the track from where I stopped to look, just a little to the west or just opposite the west end of the milk stand, where I sat in the wagon."

In the course of his cross-examination, speaking upon the same subject, the witness said:

"There was a place where I had a view up the north main track to the east. When my horses were on the track I could see down. That was the only place that I could see or did see. * * * I took an observation to the east when I was opposite the west end of the milk stand. When I looked east last before that, I was about half way up from the freight house to the milk stand. From that time, down to the time I was by the milk stand, I didn't look back. The next I knew was when the accident occurred. When my horses halted, I

was opposite the west end of the milk stand, or north of it, or about there. * * * I looked to the east there. The next I knew was when the accident occurred."

Some other evidence was given in behalf of the plaintiff tending to reveal the circumstances occurring previous to the accident, and tending to corroborate the statement of the plaintiff that there were cars that obstructed his view of the train approaching from the east. The defendant produced witnesses who gave evidence tending to shake the statement that was delivered by the plaintiff, and tending strongly to contradict the evidence offered in behalf of the plaintiff tending to establish the presence of cars which obstructed his view on the occasion of the accident.

We think the conflict in the evidence in respect to whether the cars were standing upon the siding in such a manner as to obstruct the view of the plaintiff of the approaching train, or whether there was a clear opportunity for the plaintiff, if he had more vigilantly looked and used his eyes, to have apprehended the approach of the train, as is claimed by the defendant, presented questions of fact which should have been submitted to a jury to determine. It has been repeatedly held that when "there is any evidence, direct or inferential, of care or caution on the part of the person injured, the question is one for the jury." Kellogg v. Railroad Co., 79 N. Y. 72.

In Parsons v. Railroad Co., 113 N. Y. 355, 21 N. E. 145, it was said:

"The rule requires that all cases involving the question of the plaintiff's freedom from negligence should be submitted to a jury, except those marked by gross and inexcusable neglect."

The doctrine laid down in Petrie v. Railroad Co., 66 Hun, 282, 21 N. Y. Supp. 159, seems to be applicable to the evidence that is found in the case in hand. In that case it was said, viz.:

"There was some evidence given by the defendant to the effect that there were no cars then on the branch. There being a conflict as to whether the cars were standing on the track which obstructed the view, as claimed by the plaintiff, that question was one for the jury. Bleyle v. Railroad Co., 11 N. Y. St. Rep. 585, affirmed in 113 N. Y. 626, 20 N. E. 877; Sherry v. Railroad Co., 104 N. Y. 652, 10 N. E. 128."

In Greany v. Railroad Co., 101 N. Y. 419, 5 N. E. 425, where an injury was received at a crossing, it was said:

"Whether she looked exactly at the right moment, or in each direction in proper succession, or from the place most likely to afford information, cannot be determined as matter of law; and whether upon the whole, or in view of all the surrounding circumstances, including the negligent conduct of defendant, she exercised due care, was a question which the trial court could not properly decide for itself, but was bound to submit to the jury as one which they alone could answer."

A similar rule was laid down in Miller v. Railroad Co., 82 Hun, 164, 31 N. Y. Supp. 317, affirmed in 146 N. Y. 367, 41 N. E. 90.

The rule laid down by this court in Seeley v. Railroad Co., 8 App. Div. 406, 40 N. Y. Supp. 866, is in harmony with the cases to which reference has been made, and supports the contention of the appel-

lant that, upon all the evidence relating to the plaintiff's freedom from negligence on the occasion when he was injured, a question of fact was presented for the jury to determine.

In Williams v. Railroad Co., 155 N. Y. 158, 49 N. E. 672, the court of appeals laid down a rule which may be appropriately recalled in considering the question now before us. In that case it was said:

"It is the rule and policy of the law to allow all testimony to go to, and be weighed by, the jury; and the question of the credibility of the witness is, in all cases, one for the jury."

Doubtless the learned trial judge, in directing a verdict for the defendant, was influenced by the testimony which was offered in behalf of the defendant tending to establish its allegation that the plaintiff was not free from contributory negligence. Very much can be said in support of the position taken, and the defendant's evidence strongly maintains its contention. Several of its witnesses, however, were its employés, and the circumstances under which they testified presented questions in relation to their credibility, and it was for the jury to determine what effect should be given to their evidence.

We think the closing part of the opinion in Williams v. Railroad Co., supra, may be appropriately recalled to the case in hand. It was there said, viz.:

"In this case the plaintiff gave testimony which, if credited by the jury, would have entitled him to a verdict. The trial judge apparently did not credit it, and it is quite likely that his view of the testimony was the correct one; but the difficulty with the situation is that, under our method of procedure, it was the province of the jury, not the court, to say whether his testimony was entitled to belief."

In Doyle v. Railway Co., 32 App. Div. 87, 52 N. Y. Supp. 602, referred to by the learned counsel for the respondent, it appeared that the evidence given in that case by the plaintiff, as stated by the learned judge who delivered the opinion, was not as reasonable as that given by the defendant, and was "utterly inconsistent" with the probabilities of the case. It was further said in that case: "There is such a clear and overwhelming preponderance of evidence against the plaintiff's claim that we must infer the jury misconceived the full force and bearing" of it upon the question of the plaintiff's right to recover. See Judson v. Railroad Co., 158 N. Y. 604, 53 N. E. 514.

After a full review of all the evidence given in the case in hand, we are of the opinion that two questions of fact were presented which should have been submitted to the jury—First, whether the defendant was guilty of negligence; and, second, whether the plaintiff was free from contributory negligence. Williams v. Railroad Co., supra.

Order reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except McLENNAN, J., dissenting.