voluntary cessation of liquor traffic. It is manifest that the object of the legislature was not to require proof that the licensee had ceased to traffic in liquor, which would be sufficiently shown by the fact that he had taken down the liquor tax certificate and surrendered it for cancellation, and the fact that any further sales would render him liable to prosecution and punishment, but that the prosecution was voluntary, as distinguished from duress of a criminal prosecution or a proceeding to forfeit the certificate. This provision of the statute was, I think, merely designed to prevent the surrender of the certificate, and the recovery of the rebate, if a complaint, either civil or criminal, has been made and is pending against the holder of the certificate on account of a violation of the liquor tax law, which may result in a forfeiture of his right of recovery. The statute does not require the cessation of traffic for any particular length of time before surrendering the certificate, nor does it require the licensee to promise that he will not continue the business in the future. Until the very moment that he removes the certificate he is permitted to continue his business without cessation or any evidence of his intention to cease traffic. It seems to me quite clear, therefore, that the purpose of the statute was to require proof of the nature of the cessation rather than of the fact that the licensee had ceased to traffic.

I think that this construction of the statute is sustained by People v. Lyman, 58 App. Div. 625, 69 N. Y. Supp. 1142. That was a proceeding similar to this, and the only evidence of a voluntary cessation of traffic was the surrender of the certificate and the issue of the receipt for the rebate. A preliminary objection, specifically pointing out that there was nothing to show a voluntary cessation of traffic, was overruled, and without further proof a peremptory writ requiring the payment of the rebate was granted. This ruling was sustained on appeal. It is proper to observe that we do not agree with appellant's construction that proof of sales during the 30 days would be no defense, inasmuch as no action or proceeding, civil or criminal, affecting its right to the rebate, was commenced or instituted during the 30 days succeeding the surrender of the certificate. The court of appeals has held otherwise. People v. Cullinan, supra.

It follows that the order appealed from should be reversed, the verdict set aside, and a new trial granted, with costs to appellant to abide the event.

---

### HOWELL v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. January 7, 1902.)

1. TRIAL—CONFLICTING EVIDENCE—NONSUIT.

Where, in an action for personal injuries, the court postponed action on a motion for nonsuit, and submitted to the jury the questions of negligence and contributory negligence, and the jury found for plaintiff, which finding had support in the evidence, but such evidence seemed improbable, it was error to grant the nonsuit, though the court might have ordered a new trial.

2. APPEAL—REVERSAL—NEW TRIAL.

Under Code Civ. Proc. § 1317, providing that the appellate division may reverse, affirm, or modify the judgment, or may, if necessary or proper, grant a new trial, the appellate court, on reversing a judgment of nonsuit after verdict, may order a new trial, instead of reinstating the verdict.

Williams, J., dissenting.

Appeal from trial term, Oswego county.

Action by Mary B. Howell, as administratrix, against the New York Central & Hudson River Railroad Company. From an order granting a nonsuit, plaintiff appeals. Reversed.

James Howell, the plaintiff's husband and intestate, was a man about 70 years of age, who resided in the city of Oswego, and at the time of his death was employed by the city as a street cleaner. He lived upon Albany street, a few blocks distant from the defendant's tracks, and at about half past 6 o'clock in the morning of July 22, 1899, he started from his home with the intention of entering upon the discharge of his duty in another part of the city. Not far from Albany street is another street, known as East Willow street, which crosses the defendant's tracks at nearly right angles, and then continues south a short distance, where it turns abruptly to the west, and at a point about 400 feet from East Willow street crosses the tracks again, and is known at this crossing as West Willow or Tenth street. The record does not satisfactorily disclose precisely what course the intestate took to reach his destination, but when he arrived at the defendant's tracks and attempted to cross the same he was struck by a locomotive attached to a passenger train and almost instantly killed. This action is brought by the plaintiff to recover damages upon the ground that her intestate's death was due solely to the negligence of the defendant in the management and running of its trains. At the close of the plaintiff's case a motion was made by the defendant's counsel for a nonsuit, which was denied by the court, to which ruling an exception was duly taken. A similar motion was made at the close of the entire evidence, whereupon the learned trial justice stated that he proposed to submit certain specific questions of fact to the jury, and, after taking their verdict thereon, to entertain and reserve the motion for a nonsuit for further consideration. This disposition of the motion was agreed to by counsel, and the case was thereupon submitted to the jury, which returned a verdict in favor of the plaintiff of $2,000. Thereafter the learned trial justice, after mature deliberation, handed down a decision granting the defendant's motion for a nonsuit; and from the order granting the same, as well as from the judgment entered thereon, this appeal is brought.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

William Kennedy, for appellant.
Henry Purcell, for respondent.

ADAMS, P. J. The specific questions submitted to the jury were as follows: (1) Was the death of the plaintiff's intestate occasioned by collision with one of the defendant's trains in the city of Oswego on July 22, 1899? (2) Did such collision occur as the plaintiff's intestate was crossing Utica street at a point where such street is intersected by East Willow street? (3) Was such collision caused by the negligence of the defendant? (4) Was the plaintiff's intestate free from negligence which caused or contributed to cause such collision? Each of these questions was answered in the affirmative, and the fifth, which related entirely to the question of damages,

was answered by assessing the amount thereof at the sum of $2,-000. It was conceded on all hands that the death of the plaintiff's intestate was caused by a collision with one of the defendant's trains at the time and place specified in the first question, and it therefore follows that no exception can be taken by either party to the finding of the jury in respect thereto; but as to the matters involved in the three succeeding questions a sharp issue of fact was presented to the jury. Upon the part of the plaintiff it was contended (and evidence to support such contention was given by at least three witnesses) that when the plaintiff's intestate reached East Willow street he found a freight train passing to the east; that he stood upon the cross walk near a telegraph pole until this train had passed, and then, after looking in both directions, proceeded to cross the defendant's tracks, when he was struck by a passenger train which was proceeding at a comparatively high rate of speed, in a westerly direction, upon the track north of the one upon which the freight train was moving to the east. These same witnesses also gave evidence tending to prove that no bell was rung or whistle sounded upon the locomotive attached to the passenger train until it reached the crossing in question. Upon the other hand, a large array of witnesses testified that Howell was walking easterly upon the defendant's tracks between West and East Willow streets; that he was about midway between these two streets when the freight train overtook him; that he thereupon stepped onto the adjoining track, apparently for the purpose of allowing the freight train to pass by; and that while so standing upon that track he was struck by the passenger train coming from the east. Many of these witnesses likewise testified that the bell of the locomotive was ringing, and had been ringing ever since the train left the Oswego station; but it seems to be conceded by all the defendant's witnesses, including the engineer of the passenger train, that no whistle was blown until the danger or emergency signal was given at the crossing.

The learned trial justice, in granting the motion for a nonsuit, placed his decision, in so far as at least two of the questions submitted to the jury were concerned, upon the ground that the verdict was against the weight of evidence; and with this conclusion we have no fault to find. The plaintiff's principal witnesses were not, by their own admissions, of such a character as to commend them to very favorable consideration; and the evidence given by them was much of it so improbable and so contrary to some of the established facts and circumstances of the case as to render it well-nigh incredible. Nevertheless, if that evidence can be believed, it establishes the plaintiff's cause of action, and supports the verdict of the jury. It follows, therefore, that, however improbable it may have seemed to the learned trial justice, it was for the jury, in the first instance, to determine what reliance, if any, should be placed upon it. Williams v. Railroad Co., 155 N. Y. 158, 49 N. E. 672. It is true that, even in a case where the evidence is sufficient to sustain it, a verdict may be set aside and a new trial ordered where the court is satisfied that the verdict is against the weight of evidence; yet it has been recently decided, and the rule, as at present settled, seems

to be, that where there is any conflict whatever in the evidence a verdict cannot properly be directed,—the reason for this rule being that the direction of a verdict determines substantive and existing rights, while the granting of a new trial involves merely a matter of remedy or procedure, which rests very largely in the discretion of the court. McDonald v. Railway Co., 167 N. Y. 66, 60 N. E. 282. In view of the decision last referred to, which has been rendered since the trial of this action, we feel constrained to reverse the judgment and order appealed from; but inasmuch as we are by no means satisfied with the verdict of the jury, we do not deem it proper to reinstate the same, preferring rather to avail ourselves of the power which resides in this court to direct a new trial. Code Civ. Proc. § 1317.

Judgment and order reversed, and new trial ordered, with costs to the appellant to abide the event. All concur, except WILLIAMS, J., who dissents.