## DEVEREUX v. UTICA STEAM COTTON MILLS.

(Supreme Court, Appellate Division, Fourth Department.  May 5, 1903.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—NEGLIGENCE—QUESTION FOR JURY.

Plaintiff was injured by being struck by a brass belt fastener, which was thrown from a rapidly revolving belt. Belts in defendant's factory had been previously fastened with such fasteners, but several accidents had occurred therefrom. On one occasion an operator was killed by one of the fasteners, and on another occasion one of them was thrown 90 or 100 feet through a granite iron pail, after which defendants discarded the fasteners, and united the belts with cement. About an hour before the accident, the belt parted, and it was repaired with the fasteners without plaintiff's knowledge. Held, that whether defendant was guilty of negligence in using such fasteners was a question for the jury.

**2. SAME—ASSUMPTION OF RISK.**

    Where, after several accidents had happened from the use of metallic fasteners with which to unite belts, plaintiff had complained to defendant's overseer, and he had stated that in the future all belts would be cemented, and no more fasteners used, and plaintiff testified that the belt on his machine and the belt which broke had been previously cemented, and that he had no knowledge that such belt had been repaired with fasteners, whether he assumed the risk of injury from such fasteners was a question for the jury.

    Appeal from Trial Term, Oneida County.

    Action by Michael Devereux against the Utica Steam Cotton Mills. From a judgment in favor of defendant, plaintiff appeals. Reversed.

    Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

    Southworth & Gaffney, for appellant.

    Miller, Finke & Brandgee, for respondent.

    WILLIAMS, J. The judgment should be reversed, and a new trial granted, with costs to abide event.

    The action is to recover damages for injuries to the plaintiff, alleged to have been caused by the negligence of the defendant. The defendant for many years prior to and at the time of the accident owned and operated a large cotton mill, and the plaintiff was an employé in the mill, operating mules, as a spinner. At the time of the accident there were six pairs of mules being operated in the room where plaintiff was employed. Each operator looked after one pair of mules. The pair stood facing each other, and there was an alley between them, up and down, which the operator worked a distance of 90 feet, and looked after 1,512 spindles. The plaintiff's mules were upon one side of the room, and another pair opposite was operated by one Hoffman. The other four pairs of mules were along down the room. The power for the mules was furnished by a horizontal belt running from the main shaft along over the mules to a countershaft, and then the power was carried from this countershaft to each pair of mules by vertical belts. The accident occurred by reason of the parting of the horizontal belt over the Hoffman pair of mules, at the place where the ends of the belt were joined together by means of metallic fasteners known as the "Jenks hooks." One of the hooks flew a distance of 60 feet, struck the plaintiff in the head, and injured him quite seriously. The plaintiff was at the time of the accident engaged in operating his pair of mules, and it is not suggested that he was guilty of any contributory negligence. It is claimed by plaintiff that the defendant was negligent in furnishing and permitting the use of the metallic hooks, and by the defendant that plaintiff assumed the risk of the use of the hooks. The trial court put its decision upon the ground of assumed risk, but the defendant here seeks to uphold the decision on both grounds.

    The belts, when they came to the mill new, had their ends fastened together with cement. When in use the ends would become unfastened at times. They could be repaired by recementing, by the use of leather strings, or by metallic fasteners. Among the latter there were the Jenks hooks and the Talcott fasteners. There was no

danger in the use of the cementing process, or the leather strings, but a longer time was required to repair the belt in these ways, and when the ends of the belts separated during the day, while the mules were being operated, they could be repaired quickly by the use of the metallic fasteners, and little time lost in the operating of the mules. On this account the metallic fasteners were more desirable than the process of cementing or the use of the leather strings. There was, however, a serious element of danger in the use of the metallic fasteners. When the ends of the belt separated, the metallic fasteners were liable to fly off with great force and to considerable distances, and might strike the operators and injure them, as the one did at the time of this accident. Several practical illustrations of this danger had occurred in defendant's mill prior to the accident in question. In December, 1895, an operator by the name of Brasmley was killed by a metallic fastener thrown from the ends of a belt that separated while in motion. After that for a time the belts were fastened with cement. Then later the metallic fasteners were used again to some extent. On an occasion a short time before this accident a metallic hook was thrown from a parting belt some distance through a double window, and a few days before this accident another belt parted, and one of these metallic hooks was thrown 90 or 100 feet, and through a granite iron pail. That was the same belt that parted at the time of this accident. At that time the plaintiff talked with the overseer, Mr. Moore, about the danger from the use of the metallic fasteners. The overseer said they were going to fasten all the belts with cement thereafter, and the belt in question was so fastened, and remained in that condition until the day of, and about an hour before, the accident, and plaintiff's belt was cemented also. The Hoffman belt reparted again, and was repaired with the metallic fasteners on the day of the accident, and an hour later it separated again, and this accident occurred. Under these circumstances, and considering the knowledge of the defendant of the danger to be apprehended from the use of these metallic fasteners, and the practical illustrations thereof furnished in defendant's mill, it cannot be said, as a matter of law, that, in the absence of the assumption of the risk by the plaintiff, the defendant was not guilty of negligence in the use of the metallic fastener which caused the plaintiff's injuries, so as to enable the plaintiff to maintain this action. The defendant might save time in rejoining its belts by using these fasteners rather than by cementing, but the danger to the operators in the use of the metallic fasteners was also entitled to consideration, and considering that the evidence on the trial as to the extent of the use of the metallic fasteners in other mills was conflicting.

We think the question of defendant's negligence was one that the plaintiff had a right to have submitted to the jury, rather than determined by the court as a matter of law. The case of Harley v. B. C. M. Co., 142 N. Y. 31, 36 N. E. 813, is not controlling here. The question there was as to the kind of metallic fastener which should have been used. The question of cementing the belt was not in the case. That case was disposed of upon the evidence there given as to the different kinds of metallic fasteners, their use, safety, etc. The

evidence given in this case as to the practical illustrations of the danger in the use of the metallic fasteners distinguishes this case from the Harley Case. When the Brasmley Case, reported 25 App. Div. 630, 50 N. Y. Supp. 1124, was tried, there had been in defendant's mill no practical illustration of the danger from the use of the metallic fasteners, as there had been when this accident occurred. We cannot say just what the evidence was in the Brasmley Case, what ground of negligence was alleged, or what proof was given thereof. Apparently, the question was the same as in the Harley Case, as to different kinds of metallic fasteners, rather than between metallic fasteners and cementing or the use of leather strings. The negligence, if any, in the use of metallic fasteners, was that of the defendant, and not a co-servant of plaintiff. The defendant furnished these fasteners and permitted them to be used. If they were negligently furnished and used, the defendant was itself responsible for such use. The negligence consisted not in the manner of the use, or the sufficiency of the number of fasteners used, but in the use of them at all. We are left, therefore, to the consideration of the question of assumed risk, the ground upon which the trial court granted the nonsuit. The burden of showing assumed risk was upon defendant. Dowd v. N. Y. & O. W. R. R. Co., 170 N. Y. 472, 63 N. E. 541. The evidence in this case certainly raised a question of fact for the jury, and which, under recent decisions by the Court of Appeals, the court could not take from the jury, and decide for itself. The plaintiff testified that his own belt and the Hoffman belt were both cemented, and he was working upon the assumption that no metallic fasteners were used upon these belts, which were the only ones from which he might apprehend danger. He testified that he did not know that the Hoffman belt separated and was repaired an hour before the accident, the metallic fasteners being used. He supposed at the time of the accident that the metallic fasteners were not in use upon either of these belts. If this evidence is to be believed, he, of course, assumed no risk of the use of those fasteners. He had a right to have his credibility submitted to and passed upon by the jury. The court could not nonsuit upon the ground that such evidence was not credible, and was not believed by the court. Williams v. D., L. & W. R. Co., 155 N. Y. 158, 49 N. E. 672.

The views hereinbefore expressed lead us to conclude that the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide event. All concur.